LANE and others *vs.* SCHOMP and others.

1. The words of a statute, authorizing the issue of township bonds when " the consent of a majority of the tax payers appearing upon the last assessment roll as shall represent a majority of the landed property of the township," shall be obtained, require the consent of a majority of all the tax payers, and a majority that will also represent a majority of the real estate.

2. In the construction of a statute, words should never be supplied or changed, unless to effect a meaning clearly shown by the other parts of the statute, to carry out an intent somewhere expressed.

3. An *ex parte* affidavit of a ministerial officer, as to certain facts required by statute to be sworn to, is not an adjudication of such facts, but simply evidence.

4. A ministerial officer on whom power is conferred by a special statute, to be exercised only upon certain conditions, when he acts contrary to authority, and his acts would inflict great injury for which there is no other remedy, will be enjoined. His case is not like that of a municipal corporation, exercising legislative functions or discretionary powers.

5. It seems settled that if township bonds are once issued, with the *prima facie* proof required by the statute authorizing their issue, that the statute has been complied with, and get into the hands of innocent holders for value, the township will be compelled to pay them.

On rule to show cause why an injunction should not issue.

*Mr. Gaston* and *Mr. Shipman,* for complainants.

*Mr. Keasbey* and *Mr. C. Parker,* for defendants.

THE CHANCELLOR.

This bill is exhibited by one hundred and twenty tax payers and owners of lands in the township of Bedminster, in the county of Somerset, against the township in its corporate capacity, and against the defendants, Schomp, Crater, and Van Nest, as commissioners. The object of it is to restrain the issuing of bonds by these commissioners to aid the con-

struction of the road of the Passaic Valley and Peapack Railroad Company, for the payment of which the township and the lands in it will be liable.

By an act approved April 9th, 1868, the townships along the route of the railroad above mentioned, of which the township of Bedminster is one, were authorized, through commissioners to be appointed for the purpose, to issue bonds to a certain amount, to be exchanged for the stock of the company. The defendants, Schomp, Crater, and Van Nest, were appointed the commissioners for the township of Bedminster. The second section of the act provides that it shall be lawful for said commissioners to borrow, *on the credit of their township*, such sum of money, hot exceeding ten per cent. of the value of the real estate and landed property of said township, to be ascertained by the assessment roll thereof for the year 1867, and to execute bonds therefor, under their hands and seals; but no debt shall be contracted, or bonds issued by said commissioners, until the written consent shall have been obtained of the majority of the tax payers of such township, or their legal representatives, appearing upon the last assessment roll, as shall represent a majority of the landed property of such township, appearing upon the last assessment roll of such township. Such consent shall state the amount of money authorized to be raised in such township, and that the same is to be invested in the stock of said railroad company; and the signatures shall be proved by one or more of the commissioners. The fact that the persons signing such consent are a majority of the tax payers of such township, and represent a majority of the real property of such township, shall be proved by the affidavit of the assessor of such township, endorsed upon or annexed to such written consent, and the assessor of such township is thereby required to perform such service. Such consent and affidavit shall be filed in the office of the clerk of the county in which such township is situated, and a certified copy thereof in the town clerk's office of such township; and the same or a certified copy

thereof shall be evidence of the facts therein contained, and received in evidence in any court in this state.

The act, by its fourth section, further provides that the commissioners shall every year report to the township committee the amount required to pay the principal and interest on these bonds, payable during the next ensuing year; and the excess of such sum over any dividends that may be received on the stock of the company, the town committee are required to assess, levy, and collect, of the real and landed property of the township, as other taxes are assessed and collected; and by the seventh section, at the end of the twenty-five years, the board of assessors are authorized and required to assess upon and collect from the lands in the township, the principal and unpaid interest of said bonds.

On the 17th day of December, 1868, there were filed in the office of the clerk of Somerset county, four written consents in the form required by the statute, signed by one hundred and thirty-eight names, the signatures to each of which were proved as required by the statute, by the affidavit of one of the commissioners annexed to it. To these consents was annexed the affidavit of the assessor of the township, who deposed that the persons signing such written consent are a majority of the tax payers of said township, and represent a majority of the real property of said township; and also, that they are a majority of the tax payers of the township, appearing upon the assessment roll for the year 1867, or their legal representatives, and that they represent a majority of the landed property of the township upon the assessment roll for that year. Afterwards, and after the filing of the bill in this cause, on the 13th day of February, 1869, the written consent of five other persons, properly verified, was filed in the office of the county clerk, making one hundred and forty-three names in all, with the oath of the assessor annexed; that these, with the persons who had signed the four consents first filed, were a majority of the tax payers of the township appearing on the assessment roll for 1867, or their legal

representatives, and that they represent a majority of the landed property of the township, appearing on that assessment roll.

The complainants, in their bill, allege that the persons signing such consents were not a majority of the tax payers of the township or their legal representatives appearing on the assessment roll, and that they do not represent a majority of the landed property of the township. The defendants, in their answer, say that the persons signing said consents were a majority of the tax payers of the township or their legal representatives appearing upon the assessment roll, and that they represent a majority of the landed property of said township.

The defendants contend that the consent required is not the consent of a majority of all the tax payers of the township, but only of such tax payers as represent, or are taxed for real estate. On the part of the complainants it is contended that the consent of all the tax payers is required. This involves the construction of the second section of the act recited above. The words are "the consent of a majority of the tax payers appearing upon the last assessment roll, as shall represent a majority of the landed property of the township." The words would seem clearly to require the majority of the tax payers; all the tax payers, and a majority that would represent a majority of the real estate. The only difficulty that is or can be suggested, is from the awkward and ungrammatical construction of the sentence in using the word "as" without any proper antecedent. The draftsman was evidently a bad grammarian, or lacked clearness of conception sufficient to enable him to carry out the idea with which he began a sentence, until he got to the end of it. In the next preceding sentence the phrase "*such* sum of money" is used without anything to which *such* refers, but the sentence is intelligible and explicit, and its meaning cannot be changed by interlarding at conjecture some words to amend the grammar or construction. The sentence in question, as suggested by the counsel for the de-

fendants, could have words changed or inserted, to amend the grammar, and make the meaning clear; but the danger is that it might defeat the intention of the legislature. If, as suggested by one of the counsel, the words "such of" were interpolated, so that it should read "obtained of the majority of such of the tax payers" as shall represent a majority of the lands, it would follow that any excess over one fourth of the land owners could authorize the bonds. If inserted, as suggested by the other counsel, so that it should read "obtained of such of the majority of the tax payers as represent a majority of the land," it would make the words "majority of" either useless or enigmatical; it might as well read "such of the minority;" because if only a majority of the land owners are required they might consist (as the defendants contend they do in this case) of a minority of the tax payers. If any amendment or alteration of words was permitted, the most simple would be to change "the" before majority to "such;" this besides involves no absurdity or obscurity; it would then be, "obtained of such majority of the tax payers as will represent a majority of the land." The same effect would follow if "such" was inserted before "as." This exhibition shows the danger of interpolating words in a statute *ad libitum;* the operator can generally make it mean whatever he desires. Words should never be supplied or changed unless to effect a meaning clearly shown by the other parts of the statute, to carry out an intent somewhere expressed. The succeeding part of this section clearly shows what the intent on this point was. It provides "that the fact that the persons signing such consent are a majority of the tax payers of such township, *and* represent a majority of the real property, *shall* be proved." If then we were at liberty to supply any words, it must be done in one of the two modes last suggested, for no other would be consistent with the express requirement of this provision. The counsel who prepared the answer, and the president of the railroad company, as well as the three commissioners who verified it, must, if they gave any attention to the statute, have so un-

derstood it; it expressly alleges that the persons signing the consent were a majority of the tax payers, *and* a majority of the land owners; so also do both the affidavits of the assessor filed with the county clerk, and annexed to the bill. The counsel who prepared the form printed for these affidavits of the assessors, must so have understood the act. In fact, few would or could understand it otherwise until the words shall be changed.

There is no reason for altering the words so as to exclude inhabitants not owning real estate, for although this act provides for no assessment except upon real estate, it makes the debt that of the township, and provision could at any time be made for assessing it upon all. Besides, in many cases the people, jealous of their prerogative, insist upon having a voice in public improvements, whether assessed to pay for them or not; as in building school-houses, repairing and cleaning streets; in such case, legislators would hardly venture to exclude from a right to vote those who only pay a poll tax, and to whom the cost will be no burden. Whatever motive governed them, courts have no right to change the enactments of legislators, for the reason that the change would render them more just or proper. The legislature, who passed this statute, knew well what words were proper and necessary to require the consent of a majority of land owners only; as in an act for the same object relating to the Montclair railroad, approved on the same day, they inserted a provision by clear words to effect that object; and in this act, words appropriate to require consent of all tax payers. This act must, therefore, be held to require both the consent of a majority of all the tax payers on the roll of 1867, and that such majority shall represent a majority of the real estate on that roll.

It appears by the deposition of John Rodman, annexed to the bill, that he has counted the tax payers on the township assessment roll of 1867, and that their number is four hundred and fifty-five; of this number, one hundred and forty-three, the total of all who have signed the old and new con-

sen'ts, is not a majority, or even one third. No witness on part of the defendants contradicts or varies the statement of Rodman. It is true that the two affidavits of John G. Schomp, the assessor, filed in the county clerk's office, state expressly that they are a majority of the tax payers on the roll; certified copies of these are annexed to the answer, and such copies are made evidence. But it appears from a list of all the tax payers who were assessed for real estate, annexed to the answer, carefully copied from the roll of 1867, that there were two hundred and seventy-one persons assessed as land owners in that year; and it is hardly credible that there were not in the township, tax payers not land owners to make the number more than double of those consenting. The whole mass of affidavits on both sides, shows that the only contest between the parties was as to the majority of land owners.

The defendants contend that the affidavit of the assessor is in the nature of an adjudication, and estops the complainants from inquiring into its truth. It is in no sense an adjudication, but simply evidence; it is made so expressly by the statute, which omits to make it *conclusive*, even as evidence. The whole spirit of the common law, and of the law and constitution of free states, is adverse to making an *ex parte* affidavit conclusive on any who have had no opportunity of being confronted with the witness, or of cross-examining him; and courts will not gratuitously add a provision to a statute, that contravenes this principle. All courts, and experienced practitioners of law, know that an *ex parte* affidavit is of little value in the inquiry after truth, beyond the conscience of the man who prepares it. Men of character will often swear to the most palpable untruths, if presented to them by one in whom they have confidence. And this case affords a strong illustration of the position. These commissioners, who are beyond question, men of character and respectability, have each separately sworn that he saw scores of persons sign *and seal* papers which have not a single seal to either of them, and that he, the affiant, signed

his name to each paper respectively at the same time, as an attesting witness; the six papers so proved are exhibited, and not one of them has an attesting clause, or the signature of any attesting witness, or of either of the affiants upon it. And the assessor deposes that one hundred and forty-five are a majority of four hundred and fifty-five tax payers. These affidavits, especially the truth of them, cannot be reviewed or corrected by any process known to the law or in equity, and the provisions of a statute to make them conclusive, should be very explicit and clear. Like the acknowledgment and proof of deeds and the proof of wills, which by statute are made evidence by much the same words, they are *prima facie* evidence, and may be rebutted by any lawful proof.

This conclusion makes it unnecessary to consider several other important questions of law and of fact raised and fully discussed by counsel on the argument.

The defendants admit that they intend to issue these bonds to the amount of $115,000. They have no authority to do this; and the complainants are entitled to an injunction to restrain them. This is their only remedy; as it seems settled by repeated decisions both in the federal and state courts, that if bonds are once issued with such *prima facie* proof that the statute has been complied with, and get in the hands of innocent holders for value, the township will be compelled to pay them. These commissioners are not a municipal corporation exercising legislative functions or discretionary powers. But they are ministerial officers, on whom power is conferred by a special statute, to be exercised only upon certain conditions; and the cases regarding municipal corporations with legislative powers, which counsel with so much learning and research have cited on the argument, have no application to the case under consideration.

I am of opinion that the injunction applied for must issue.