151 N.J. Super. 386 (1977)
376 A.2d 1299
UKRAINIAN NATIONAL URBAN RENEWAL CORPORATION, A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
JOSEPH L. MUSCARELLE, INC., DEFENDANT-RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 31, 1977.
Decided July 7, 1977.
*389 Before Judges CARTON, KOLE and LARNER.
Mr. Theodore W. Geiser argued the cause for plaintiff-appellant and cross-respondent (Messrs. McElroy, Connell, Foley & Geiser, attorneys; Mr. John F. Neary on the brief).
Mr. Gerald W. Conway argued the cause for defendant-respondent and cross-appellant (Messrs. Conway, Reiseman, Michals, Wahl, Bumgardner & Hurley, attorneys).
The opinion of the court was delivered by CARTON, P.J.A.D.
This appeal involves a challenge to an award made pursuant to an arbitration clause in a construction contract. The general contractor, defendant *390 Joseph L. Muscarelle, Inc., invoked the arbitration procedure after a dispute arose between it and plaintiff Ukrainian National Urban Renewal Corporation relating to the foundation of the building defendant agreed to construct.
Although the record is an extensive one, the facts relevant to this appeal are clear and essentially undisputed. In November 1970 Muscarelle entered into a contract with Ukrainian to construct an office building on a site in Jersey City owned by plaintiff for the sum of approximately $9,610,000. In the main, the language of the general contract ("master agreement") followed the standard form used by the American Institute of Architects. Provisions in the contract under the heading of "General Conditions of the Contract for Construction" govern the present dispute.
The arbitration scheme created by the general conditions required the parties to submit all claims and disputes initially to the architect for resolution within "a reasonable time," and permitted each party to make a written demand for arbitration after the submission of the architect's decision.
Article 7.10.1 of the general conditions provided:
7.10.1 All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, except * * * with respect to the Architect's decisions on matters relating to artistic effect * * * shall be decided by arbitration * * *. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.
The master agreement between the parties provided for the extension of times within which Muscarelle was required to perform work when acts of Ukrainian, its architect, another contractor, or other causes delayed progress. The agreement also obligated Ukrainian to pay additional costs, including delay expenses, incurred by Muscarelle due to changes in the work approved by Ukrainian, specifically extra work caused by "concealed conditions encountered * * * *391 below the surface of the ground [or] unknown physical conditions below the surface of the ground of an unusual nature, differing materially from those ordinarily encountered * * *."
The master agreement also required Muscarelle to include certain provisions in the contracts executed with any subcontractors retained by Muscarelle, particularly provisions which
* * * require that all claims for additional costs, extensions of time, damages for delays or otherwise with respect to subcontracted portions of the Work shall be submitted to the Contractor * * * in sufficient time so that the Contractor may comply in the manner provided in the [master agreement] for like claims by the Contractor upon the Owner; * * *.
In compliance with these requirements Muscarelle included in its agreements with its subcontractors the following provision:
9. If the Subcontractor shall claim compensation for any damage allegedly sustained by reason of any act or omission of the Owner, the Contractor or any other person or should the Subcontractor claim that any work required of it is not required by this Subcontract, it shall, within three days after sustaining such damage or within three days after being directed to perform such work, deliver to the Contractor a written statement of the nature and basis of its claim and, by the tenth day of the calendar month succeeding, the Subcontractor shall deliver to the Contractor a verified itemized statement of the details and amount of such damage or extra work. * * * If the provisions of this paragraph are complied with, the Contractor will, upon the Subcontractor's written request, take all steps necessary to obtain from the Owner, if possible, payment for such damage or extra work. * * *
These subcontract agreements also contained an "exculpatory" provision protecting Muscarelle from liability to the subcontractors:
10. * * * The Contractor shall not be liable, and the Subcontractor shall make no claim, for damages for any delay, suspension or interruption of the work, whether caused by the Contractor, any of the Contractor's other subcontractors, any other contractor working on the site or by the Owner. * * *
*392 During the construction of the building's foundations Muscarelle encountered an unanticipated subsurface rock formation. Removal of this rock was not covered by the master agreement, and a dispute between plaintiff and defendant arose concerning the appropriate extension of time to be allowed for the excavation of the rock, and plaintiff's responsibility for additional costs incurred by defendant and its subcontractors both for the removal of the rock and for delays resulting from the extra work.
The excavation of this rock was greatly complicated by the location of the building's foundation directly over the Port Authority's "PATH" subway tunnels, and the Port Authority's refusal to permit the rock to be blasted out of the area. Although Muscarelle suggested that the design of the foundation be changed in lieu of removing the rock, Ukrainian's architect directed that the rock be removed by mechanical methods. According to Muscarelle, due to the hardness of the rock, and the confined working area, this excavation caused a 252-day delay in the completion of the building, and generated extra costs for both itself and its subcontractors of approximately $1,500,000.
After extended negotiations with Ukrainian to resolve the dispute over the extra work and delay costs, Muscarelle submitted claims for itself and its subcontractors for arbitration. Prior to the first arbitration hearing in December 1972 Ukrainian filed suit in the Law Division seeking a declaratory judgment that arbitration was not ripe because of Muscarelle's failure to provide Ukrainian's architect with sufficient information to render a decision on its claims, as required by the master agreement. Ukrainian's complaint made repeated references to the claims submitted by Muscarelle on behalf of the subcontractors, yet it did not challenge the arbitrability of these claims.
After the trial judge entered summary judgment ordering arbitration the parties began arbitration hearings in December 1974. 23 hearings were conducted at which 19 witnesses gave approximately 3,000 pages of testimony, and 1,500 *393 pages of exhibits were introduced into evidence. The final hearing was completed in July 1975.
From the beginning of these hearings Muscarelle made it clear that it was presenting not only its own extra work and delay cost claims, but also those claims submitted to it by various subcontractors. The parties discussed initially the procedure by which the subcontractors' claims were to be presented at the hearings, and one of the arbitrators indicated it was the arbitrators' understanding that, aside from the claims of one subcontractor, "the individual subcontractor is going to come in and offer proof as to why he has a claim [and that] [t]hat will afford [Ukrainian] an opportunity to examine those particular subcontractors." Neither party questioned the accuracy of this statement.
In an early hearing session Ukrainian made the following presentation of its position on the arbitration of the subcontractors' claims:
* * * If [Muscarelle's] concern is whether or not [Ukrainian] * * * is relying upon boiler plate or technical provisions in the contract which might, if strictly construed, operate to insulate it from a claim for "Escalation" please be assured that [Ukrainian] does not invoke those defenses, if indeed they exist. We did agree  the architect and [Ukrainian]  to compensate for escalation costs, whether or not they [Muscarelle] were obligated to, and that remains the case today. [Emphasis supplied]
Later in the proceedings, the parties agreed, during a long colloquy between counsel, that the arbitrators were to decide all Muscarelle's claims against Ukrainian, all Ukrainian's counterclaims against Muscarelle, and all claims of subcontractors known to Muscarelle at the time of the arbitration. One arbitrator, early in this extended discussion between counsel, described his understanding of the issues submitted by the parties for resolution:
I take it from your statement, Mr. Goetz [counsel for Muscarelle], and I just want you to confirm it to me, that you will be in a position on behalf of your client and its subcontractors, to present to the panel claims you may have of any kind growing out of this project *394 and that the panel's decision on all of the claimants and subcontractors' claims, * * * and all of [Ukrainian's] claims and cross-claims and counterclaims, that they all will be decided and that the panel's decision will be a sign-off of the entire job. Is that our understanding? [Emphasis supplied].
Counsel for Ukrainian responded that
* * * [T]hat is certainly ours both ways, with only this exception, which I am sure you will understand. To the extent that certain written bonds may survive, of course.
He also indicated to Mr. Goetz that he
* * * would be satisfied if you are able to say every single affirmative claim on behalf of Muscarelle or any of its subcontractors, suppliers, material men, laborers and the like of which we presently have knowledge or have ever had knowledge will be submitted here, period. That's enough for me. * * * [Emphasis supplied]
Muscarelle's counsel then restated the stipulated issues to be submitted to the arbitrators:
* * * Muscarelle cannot, for legal purposes, waive [as yet unknown] claims or rights of these subcontractors if, in fact, any do exist. However, Muscarelle will state for the record that to its knowledge those claims that have been presented by suppliers and subcontractors with requests for prosecution to the owner in accordance with the terms and conditions of the subcontracts will have been presented by the conclusion of this arbitration for adjudication in the award; and believes that this should be dispositive of all of the dispute, between the parties, including claims made through Muscarelle by its subcontractors and suppliers; * * * [Emphasis supplied]
He concluded by describing the mechanics both parties wished the arbitrators to follow:
It is also, I guess, a mutual understanding and agreement that the arbitrators, in their award, will be requested to set out the individual findings with regard to the claims of the subcontractors presented in this arbitration as well as the credits, if any, which are determined by the tribunal in connection with the punchlist work that is now also part of this arbitration for the specific purpose *395 that if any such credits are determined to be due that they are properly to be allocated to the subcontractors in making final payment to them. [Emphasis supplied]
In January 1976 the arbitrators issued a unanimous decision awarding Muscarelle $1,185,364, less $55,616 to cover Ukrainian's counterclaims, for a total of $1,129,748. As requested by the parties, the award settled all claims between Ukrainian and Muscarelle and its subcontractors, and itemized the amounts of the total awarded to Muscarelle to be allocated to Muscarelle and to each subcontractor as follows: Joseph L. Muscarelle, Inc. $758,014; Prefac Concrete Corp. $29,400; Elizabeth Iron Works, Inc. $63,900; Trimech Corp. $170,950; R.J. DeMarrais, Inc. $29,300; A.C. Stone Co. $23,600; Astro Concrete Co. $72,400; Westinghouse Electric Co. $18,000; Nicholas J. Bouras Co. $7,200, and Lupton Manufacturing Co. $12,600. The $55,616 counterclaim was offset against the total amount awarded to Muscarelle and its subcontractors.
In February 1976 Ukrainian paid Muscarelle approximately $700,000 of the awarded damages due to Muscarelle directly. Ukrainian withheld payment of the remaining $427,000 representing the amount awarded to the subcontractors, and pressed a suit to vacate that portion of the award on the ground that the arbitrators lacked the authority to resolve the subcontractors' claims because they were not arbitrable under the master agreement.
The trial judge agreed with Ukrainian that the subcontractors' claims were not arbitrable under the master agreement, holding that the subcontractors lacked "standing" in the arbitration because they were not parties to the master agreement between Ukrainian and Muscarelle. However, the judge found that Ukrainian had agreed to submit the subcontractors' claims, as well as the claims of Ukrainian and Muscarelle, to the arbitrators for disposition, and concluded that Ukrainian had waived any objections it might have had to the arbitration of those claims. He accordingly confirmed the entire arbitration award, but denied Muscarelle's application *396 for interest from the original date of the award. The judge also denied Ukrainian's subsequent motion for a plenary hearing on the waiver issue, commenting that "everything that could possibly have a bearing on this case was set forth in the record."
Ukrainian appeals the judgment confirming the arbitration award and Muscarelle cross-appeals the trial judge's denial of interest from the date of the arbitration award.
We must evaluate Ukrainian's challenge to this arbitration award in light of the well-settled policies favoring arbitration of commercial disputes. The essence of arbitration is that, by agreement of the parties, the arbitrators decide both the facts and the law. Daly v. Komline-Sanderson Engineering Corp., 40 N.J. 175, 178 (1963); Melvin P. Windsor, Inc. v. Mayflower S. & L. Ass'n, 115 N.J. Super. 219, 220-21 (App. Div. 1971); Harsen v. West Milford Tp. Bd. of Ed., 132 N.J. Super. 365, 371 (Law Div. 1975). The forum chosen by the parties operates as a trial court, and "[j]udicial review of [the awards rendered by it] is extremely narrow, generally confined to matters of corruption or errors appearing on the face of the award." Daly v. Komline-Sanderson Engineering Corp., supra, 40 N.J. at 178; Melvin P. Windsor, Inc. v. Mayflower S. & L. Ass'n, supra, 115 N.J. Super. at 220. An arbitrator's factual determinations concerning the merits of the dispute submitted to him are not reviewable by the court as such, Harsen v. West Milford Tp. Bd. of Ed., supra, 132 N.J. Super. at 371 ("Harsen"). While the arbitrator's legal conclusions may be scrutinized only to determine whether one or more of the criteria of N.J.S.A. 2A:24-8 is fulfilled. Daly v. Komline-Sanderson Engineering Corp., supra; Local Union 560 v. Eazor Express, Inc., 95 N.J. Super. 219, 227 (App. Div. 1967); Collingswood Hosiery Mills v. Am. Fed. of Hosiery Wkrs., 31 N.J. Super. 466, 469-70 (App. Div. 1954); Harsen, supra, 132 N.J. Super. at 371. Arbitration is viewed favorably by our courts, and every doubt is resolved in favor of the validity of the award. Melvin P. Windsor, Inc. v. Mayflower *397 Sav. & L. Ass'n, supra, 115 N.J. Super. at 220; Collingswood Hosiery Mills v. Am. Fed. of Hosiery Wkrs., supra, 31 N.J. Super. at 473. See Swift Industries, Inc. v. Botany Industries, Inc., 466 F.2d 1125, 1130-1131 (3 Cir.1972); Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1126-28 (3 Cir.1969); Lentine v. Fundaro, 29 N.Y.2d 382, 386, 328 N.Y.S.2d 418, 422, 278 N.E.2d 633, 635 (A. App. 1972).
Because the trial judge concluded that the subcontractors' damage claims were not arbitrable under the master agreement, absent Ukrainian's waiver of the defense, the court did not explicitly apply the statutory standard of review. N.J.S.A. 2A:24-8 provides that:
The court shall vacate the award in any of the following cases:
a. Where the award was procured by corruption, fraud or undue means;
b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing. upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;
d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.
[Emphasis supplied]

* * * * * * * *
Properly articulated, the basis of Ukrainian's challenge to the award in the trial court and here is that the award should have been vacated because "the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made." N.J.S.A. 2A:24-8(d). Ukrainian might also have couched its challenge in terms of the "undue means" basis in N.J.S.A. 2A:24-8(a) by claiming that the arbitrators made a mistake of law. See Anco Products Corp. v. T.V. Products Corp., 23 N.J. Super. 116, 124 (App. Div. 1952); *398 Held v. Comfort Bus Line, Inc., 136 N.J.L. 640, 641-42 (Sup. Ct. 1948).
The "exceeds-their-powers" test of N.J.S.A. 2A:24-8(d) has consistently been construed to require the reviewing court to determine "whether or not the interpretation of the contractual language contended for by the party seeking arbitration is reasonably debatable in the minds of ordinary laymen." Standard Oil, etc., Union v. Esso Research Co., 38 N.J. Super. 106, 119 (App. Div. 1955), aff'd on reh. 38 N.J. Super. 293 (App. Div. 1955); Harsen, supra, 132 N.J. Super. at 375. Where the agreement provides for arbitration of disputes over contractual language, and a debatable question exists, the reviewing court is bound by the arbitrators' decision. Harsen, supra, 132 N.J. Super. at 374. Cf. Belardinelli v. Werner Continental, Inc., 128 N.J. Super. 1, 7, 11 (App. Div. 1974) (under § 301 of Labor Management Relations Act, 29 U.S.C.A. § 185, court held that arbitration award must be rationally inferable from the contract in order to merit judicial enforcement).
The arbitration clause in the master agreement is broad in scope. It covers "[a]ll claims, disputes and other matters in question arising out of, or related to, this Contract or the breach thereof * * *" (emphasis supplied). The extra expenses incurred by the subcontractors due to the rock excavation and the attendant delays would seem to be "claims * * * related to [the master agreement] * * *," and hence included within the ambit of the master agreement's arbitration clause. We think that on the plain words of the master agreement's arbitration clause, the subcontractors' claims are arbitrable issues.
Ukrainian argues, however, that the lack of privity between itself and the subcontractors bars this conclusion. We note that the master agreement provides for the transmission of the subcontractors' delay expense claims by Muscarelle to Ukrainian, and imposes upon the subcontractors, "pursuant to an appropriate [subcontract] agreement," the obligation to "preserve and protect the rights of [Ukrainian] * * * *399 under the [master agreement] with respect to the Work to be performed under the subcontract," and to perform the subcontracted work in accordance with the terms of the master agreement. We think it arguable that by virtue of such provisions the subcontractors became beneficiaries of the promises to arbitrate and to pay delay expenses between Ukrainian and Muscarelle with at least the right to have their claims arbitrated in a proceeding between Muscarelle and Ukrainian. See and compare Gavlik Constr. Co. v. H.F. Campbell Co., 526 F. 2d 777, 787-89 (3 Cir.1975).
However, we need not rest our conclusion on this basis because both parties agree that Muscarelle is clearly a party to the master agreement with, to use the trial judge's words, the requisite "standing" to demand arbitration on any dispute arising under its terms. Privity goes to liability, not admirability. The fact that Ukrainian might not be liable to Muscarelle or to the subcontractors for the subcontractors' delay expense claims does not render such claims nonarbitrable under the broad arbitration provisions of the master agreement.
In addition, Ukrainian contends that the arbitrators also exceeded their authority by ignoring the "exculpatory" language in the agreements between Muscarelle and its subcontractors. Ukrainian reasons that Muscarelle was immunized from liability to the subcontractors, could not have suffered any actual damages due to the delay expense incurred by them, and therefore could not demand that Ukrainian compensate it for such expenses. Again, appellant confuses liability with admirability. Even if the court were to accept Ukrainian's contention, the admirability of the dispute would not be disturbed.
Applying the Standard Oil standard here, both the admirability of the subcontractors' claims and the liability of Ukrainian to Muscarelle for the subcontractors' claims are clear  or at least present debatable questions under the master agreement. Standard Oil, etc., Union v. Esso Research Co., supra, 38 N.J. Super. at 119. The existence of the *400 exculpatory clause in the subcontracts does not render the subcontractors' claims nonarbitrable under the master agreement, or immunize Ukrainian from liability to Muscarelle as a representative of its subcontractors for their claims. Univ. of Alaska v. Modern Construction, Inc., 522 P.2d 1132, 1139 n. 27 (Alaska Sup. Ct. 1974). See Buckley & Co., Inc. v. State, 140 N.J. Super. 289, 319-320 (Law Div. 1975); Seger v. United States, 469 F.2d 292, 300-301, 199 Ct. Cl. 766 (1972). But see, Severin v. United States, 99 Ct. Cl. 435 (1943), cert. den. 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 (1944). Hence, we conclude that the arbitrators did not exceed the scope of their powers on either the arbitrability issue or the merits in making the award.
The "undue means" criteria of N.J.S.A. 2A:24-8(a) has been the subject of changing judicial interpretation. Harsen, supra, 132 N.J. Super. at 371-372. Prior to this court's decision in Brooks v. Pa. Mfrs. Ass'n Ins. Co., 121 N.J. Super. 51, 54-55 (App. Div. 1972), mod. on other grounds 62 N.J. 583 (1973), only when an arbitrator made clear his intention to decide a dispute according to the law, rather than according to his own view of the equities in the situation, would the reviewing court invoke the "undue means" grounds and reverse the award for a clear mistake in the interpretation and application of the legal rule. Collingswood Hosiery Mills v. Am. Fed. of Hosiery Wkrs., 31 N.J. Super. 466, 469 (App. Div. 1954); Anco Products v. T.V. Products Corp., supra; Held v. Comfort Bus Lines, Inc., supra.
Brooks created a presumption that an arbitrator intended to apply a legal rule when the record did not affirmatively show his intention to ignore the legal rule. Brooks v. Pa. Mfrs. Ass'n Ins. Co., supra, 121 N.J. Super. at 54-55. Under the principles announced in Brooks, the reviewing court examines the legal foundation of an arbitration award if the record yields no affirmative indication that the arbitrator did not rely upon the applicable legal rule. In re Arbitration Between Mary & William Harris v. Security Ins. Group, *401 140 N.J. Super. 10, 15 (App. Div. 1976); Harsen, supra, 132 N.J. Super. at 372. In making this review, however, the courts remain mindful that "arbitration should be an end to litigation, not the beginning of it," Collingswood Hosiery Mills v. Am. Fed. of Hosiery Wkrs., supra, 31 N.J. Super. at 473, and overturn an award only when the arbitrator's error is clear. Harsen, supra, 132 N.J. Super at 373.
Applying the Brooks standard to this case, we find no affirmative representation on the record that the arbitrators spurned the applicable legal rules, and we must therefore presume that they intended to apply those rules in deciding the merits of the dispute. There appear to be no reported New Jersey decisions on point. The Supreme Court of Alaska has reviewed an arbitration award granted in circumstances strikingly similar to these facts, and has upheld that portion of the award which granted a general contractor damages based upon claims submitted by the general contractor on behalf of its subcontractors. Univ. of Alaska v. Modern Const., Inc., supra, 522 P.2d at 1139. In the field of government contracting, the United States Court of Claims has ruled consistently that a general contractor may, on behalf of its subcontractors, maintain a claim against the government for "equitable adjustment" for damage caused by government precipitated delays where such delay claims are provided for in the prime contract, despite the inclusion of any exculpatory language in the subcontracts releasing the general contractor for any liability to the subcontractors. Seger v. United States, supra, 469 F.2d at 300; Blount Bros. Const. Co. v. United States, 348 F.2d 471, 474, 172 Ct. Cl. 1 (1965). In similar factual situations involving contracts with the State of New Jersey, our courts have reached essentially the same conclusion. Buckley & Co., Inc. v. State, supra, 140 N.J. Super. at 319-320.
The arbitrators' conclusion and award were entirely congruent with the analyses of the Alaska Supreme Court and the Court of Claims. In our view, the master agreement *402 contemplated the "equitable adjustment" of any delay expense claims between Ukrainian and Muscarelle through the arbitration mechanism. The master agreement directed Muscarelle to include in all its subcontracts provisions which required the subcontractors to submit to Muscarelle all claims they had for "additional costs, extensions of time, damages for delays or otherwise with respect to subcontracted portions of the Work" so that Muscarelle could submit these claims within the time specified in the master agreement for the submission of Muscarelle's own claims. Further, Muscarelle was required by the subcontracts to submit the subcontractors' claims to Ukrainian if they were presented in a timely fashion.[1] Taken together, the provisions of the master agreement "* * * provide a mechanism that * * * can mitigate injury to the subcontractors, * * * [which is] * * * incorporated by reference in the subcontracts * * *." Seger v. United States, supra, 469 F.2d at 300. The arbitrators properly applied the applicable principles of law. We therefore hold that the arbitrators had the requisite authority and that they did not employ undue means under N.J.S.A. 2A:24-8 in making the award.
We conclude that the judgment confirming the arbitration award must be affirmed. Additionally, we agree with the trial judge's conclusion that Ukrainian waived any objection to the arbitrability of the subcontractors' claims, for the reasons expressed by him.
The judgment confirming the arbitration award allowed interest to run only from May 26, 1976, the date the judge rendered his oral decision confirming the award. We are of the opinion that the interest should have been awarded from the date of the award. Reliable Water Co. *403 v. Monroe Tp. Mun. Util., 146 N.J. Super. 291, 293-294 (App. Div. 1977). See Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 506 (1974); Harsen, supra, 132 N.J. Super. at 385; R. 4:42-11(a).
The judgment appealed from is modified to provide that interest shall be payable on the unpaid amount of the arbitration award from January 12, 1976, the date of the award. The amount of interest due to each subcontractor shall be calculated in proportion to the amounts found by the arbitrators to be due each subcontractor as its share of the award. Interest shall also be payable to Muscarelle from the date of the award to the extent of any amount not already paid. The total amount so found due to the subcontractors shall be payable to Muscarelle in trust for the benefit of the subcontractors. If there is any dispute as to the amounts due, the trial judge shall make the necessary computation and enter an appropriate order.
Affirmed as modified.
NOTES
[1] From the record it clearly appears that even if the subcontractors' claims were not timely presented to Muscarelle, by submitting the claims to arbitration Muscarelle waived any objection to timeliness and Ukrainian is not entitled to rely upon any such procedural deficiency.