MARLENE H. GOLDBLATT, PLAINTIFF, v. TRANSAMERICA INSURANCE COMPANY AND UNIVERSAL UNDERWRITERS INSURANCE COMPANY, DEFENDANTS.

Superior Court of New Jersey
Law Division Cumberland County

Decided December 23, 1982.

*Charles W. Gabage* for plaintiff (*Shapiro, Eisenstat & Gabage, P.A.*, attorneys).

*John Varjabedian* for defendant Transamerica Insurance Company.

*Kenneth G. Andres* for defendant Universal Underwriters Insurance Company (*Needell & Andres,* attorneys).

EDWARD S. MILLER, J.S.C.

This matter comes before the court by way of a complaint and order to show cause, in accordance with the provisions of *R.* 4:67–1 *et seq.,* and presents for the court's consideration the status of an arbitrator's award rendered pursuant to the terms of the uninsured motorist (UM) endorsement of an automobile liability insurance policy. As a matter of first impression, the court is asked to decide whether such award should be modified to include interest running from the date that arbitration was instituted, as well as plaintiff's costs of arbitration.

Plaintiff Marlene H. Goldblatt was injured in a motor vehicle accident occurring on February 9, 1980. This accident was of the hit-and-run variety, and plaintiff consequently asserted claims under the UM endorsements of insurance policies issued by defendant Universal Underwriters Insurance Company (the insurer of the vehicle plaintiff was operating) and by defendant Transamerica Insurance Company (the insurer of plaintiff's father, with whom she resided at the time of this accident). The insurers agreed between themselves that Universal should bear primary responsibility for plaintiff's claims.

It is unclear from the record before the court why efforts at settlement of this matter were frustrated, but in any event the parties were unable to reach an agreement with respect to plaintiff's claims under these policies. Accordingly, and in pursuance of the terms of the UM endorsement of the Universal policy, which provided that matters in dispute "shall be settled by arbitration, which shall be conducted in accordance with the rules of the American Arbitration Association," the parties submitted plaintiff's claims to arbitration on January 25, 1982. Arbitration was conducted on August 25, 1982 and an award

entered in plaintiff's favor in the amount of $22,500 on October 7, 1982.

Plaintiff now seeks enforcement of that award pursuant to the provisions of *N.J.S.A.* 2A:24–7. Plaintiff also urges that such award be modified to include interest running from the date that this matter was submitted to arbitration, as well as the costs incurred by plaintiff as a consequence of this matter having proceeded to arbitration. Assuming the court to be empowered to effectuate the changes plaintiff seeks herein, the court proceeds to an analysis of the legality of those proposed changes.

I

It is a recognized principle of law in this State that a court called upon to confirm an arbitrator's award should include in its judgment of confirmation interest running from the date of that award. *Ukrainian Nat'l Urban Renewal Corp. v. Joseph L. Muscarelle, Inc.,* 151 *N.J.Super.* 386 (App.Div.1977); *Harsen v. West Milford Tp. Bd. of Ed.,* 132 *N.J.Super.* 365 (Law Div.1975). Defendants in the present case concede the validity of this proposition, and accept that the court's judgment herein should reflect an adjustment for interest appropriately calculated.

Plaintiff, however, seeks even greater compensation. It is her contention that because she is a tort victim, she is entitled to all of the benefits afforded that class of litigants, including the right of prejudgment interest provided under *R.* 4:42–11(b) of the rules governing the courts of this State. Drawing a parallel between the commencement of arbitration and the institution of a civil suit, plaintiff maintains that interest should be assessed against the arbitrator's award herein from the date that her claim was submitted to arbitration. She suggests that such an analogy is appropriate because arbitration is the only recourse available to tort victims like herself who seek compensation under the UM endorsements of automobile liability insurance policies.

The civil practice rules of the Superior Court of this State make express provision for the addition of prejudgment interest to damages awards rendered in tort actions. In such actions,

> ... the court shall ... include in the judgment simple interest at 12% per annum on the amount of the award from the date of the institution of the action or from a date 6 months after the date the cause of action arises, whichever is later, provided that in exceptional cases the court may suspend the running of such prejudgment interest. [*R.* 4:42–11(b)]

In the case of *Busik v. Levine,* 63 *N.J.* 351 (1973), former Chief Justice Weintraub discussed the rationale for awarding prejudgment interest to a tort victim despite the fact that the claim of such a plaintiff is by its very nature unliquidated until a verdict for damages has been rendered by the trier of facts. It was his view that an award of this kind was warranted for two reasons. The first of these was concerned with essential justice between the parties. As he explained for the court,

> ... Interest is not punitive; here it is compensatory, to indemnify the claimant for the loss of what the moneys due him would presumably have earned if payment had not been delayed. [at 358]

The second rationale for such an award was concerned with the administration of justice.

> ... (T)here is also a public stake in the controversy, for tort litigation is a major demand upon the judicial system. Delay in the disposition of those cases has an impact upon other litigants who wait for their turn, and upon the taxpayers who support the system. And here there is a special inducement for delay, since generally the claims are covered by liability insurance, and when payment is delayed, the carrier receives income from a portion of the premiums on hand set aside as a reserve for pending claims. See *In re Insurance Rating Board,* 55 *N.J.* 19 (1969). Hence, prejudgment interest will hopefully induce prompt defense consideration of settlement possibilities. In that meaningful way, prejudgment interest bears directly upon the judicial machinery and the problems of judicial management. [at 359–360]

Of course, the court could easily dispose of this matter by simply recognizing that the litigation pending before it is not a tort action, hence precluding the application of *R.* 4:42–11(b). In truth, the present action is a summary proceeding for the enforcement of an arbitrator's award. Such award was rendered as a consequence of a contract between the plaintiff and her insurer. Viewed from this perspective, the court would be concerned herein with the enforcement of the respective rights

and duties of the parties as defined by that agreement. Accordingly, any question regarding the appropriate assessment of interest would be governed by *R.* 4:42–11(a).

The court views this line of analysis as superficial, however. Plaintiff is a victim of tortious conduct. Because of the nature of the events leading to her injuries, she is unable to identify the tortfeasor responsible for the same. If she is to be compensated at all, it must be by way of the automobile liability insurance she has purchased from defendant insurer. Yet, while that insurance provides coverage in the event of an accident such as the one which has resulted in plaintiff's present injuries, it also restricts the variety of remedies available to her if she and her insurer disagree as to questions of liability or damages. Such disagreements must be submitted to private arbitration. When plaintiff finally arrives in a judicial forum to obtain compensation for her tort-related injuries, her status is that of a contractor seeking enforcement of her contractual rights as derived from the policy of insurance she has purchased from defendant insurer. While a tort victim, she can never commence a tort action so long as she elects to exercise her rights as a beneficiary of her contract of insurance; should she elect some other course of action, she will surely go uncompensated.

Thus, the court is persuaded that a claimant so situated as plaintiff should be afforded the benefits generally available to tort victims under the rules governing the courts of this State. In particular, the court agrees that an award of prejudgment interest as defined under *R.* 4:42–11(b) should be appended to an arbitrator's award when such award is confirmed in a summary proceeding, and the arbitrator's award has been arrived at pursuant to the provisions of the UM endorsement of an automobile liability insurance policy.

By following this course the court believes that the purposes of the award of prejudgment interest in tort actions will be accordingly furthered. First, plaintiff is not unlike the typical plaintiff in an action for damages arising out of an automobile

accident. Like any plaintiff in this genre of personal injury action, she must await compensation until the questions of liability and damages are decided by a neutral decision-maker. Notwithstanding that such decision-maker is a privately-appointed arbitrator in the present situation, it remains fundamental that in either forum (*i.e.*, private arbitrator or judiciary) plaintiff's claim is unliquidated until a final resolution of these matters (*i.e.*, liability and damages) has been achieved. This fact has not, however, prevented the courts from awarding prejudgment interest to plaintiffs in tort actions in this State, because it is the policy of this state that such plaintiffs should be indemnified "for the loss of what moneys due (them) would presumably have earned if payment had not been delayed." *Busik v. Levine*, 63 *N.J.* at 358. The court sees no distinction in the present case where the payment of moneys due a tort victim under the UM endorsement of an automobile liability insurance policy is delayed while an arbitrator decides questions of liability and damages.

An award of prejudgment interest in cases such as the present one will also tend to further the public interest in the administration of justice. Plaintiff is in court on this matter precisely because she and her insurer were unable to achieve an amicable settlement of her claims and thereby obviate the need for recourse to arbitration. If Chief Justice Weintraub's speculation was valid, that the spectre of prejudgment interest would induce settlement in the typical automobile accident case, see *Busik v. Levine*, 63 *N.J.* at 359–360, it would appear to have equal validity in the context of claims being asserted under the UM endorsement of an automobile liability insurance policy. Where there is settlement there is no need for arbitration. And where there is no arbitration, there is no need for resort to a judicial forum for the enforcement of the arbitrator's award. Perforce, the burdens on an already overtaxed judicial system will be accordingly lessened.

## II

Plaintiff also seeks the transposition of costs incurred as a consequence of her claim having been submitted to arbitration. In particular, she seeks recovery of the $100 fee paid as a condition of having her claim submitted to arbitration, as well as the cost of the $75 filing fee incurred with the commencement of this summary proceeding in the Superior Court.

■ The court is cognizant of its authority to transpose a litigant's cost and thereby relieve the prevailing party of the burden of those costs. *R.* 4:42–8 of the civil practice rules of this State provides that "unless otherwise provided by law, these rules or court order, costs shall be allowed as of course to the prevailing party."

Further, the court is aware that, at least as to filing fees, the Legislature has deemed it appropriate to include such fees in an award of costs to the prevailing party. *N.J.S.A.* 22A:2–8. Plaintiff brought the present action seeking enforcement and modification of the underlying arbitrator's award. The court has concluded that the relief plaintiff seeks is warranted. She is thus a prevailing party and entitled to recover the costs of filing fees incurred with the commencement of this action.

■ The more difficult question concerns the transposition of plaintiff's costs associated with the institution of arbitration proceedings. As indicated above, plaintiff's claim was submitted to arbitration pursuant to the terms of the UM endorsement included in the automobile liability insurance policy she purchased from defendant Universal Underwriters. That endorsement provided that matters in dispute "shall be settled by arbitration, which shall be conducted in accordance with the rules of the American Arbitration Association." As a part of the Administrative Fee Schedule of the American Arbitration Association, the party initiating arbitration is required to pay an administrative fee of $100. Plaintiff seeks recovery of this amount despite the express terms of her agreement with defendant-insurer.

, The court recognizes the general validity and enforceability of an arbitration clause within a UM endorsement in an automobile liability insurance policy. *New Jersey Mfrs. Ins. Co. v. Haran,* 128 *N.J.Super.* 265, 269 (App.Div.1974). The court is also aware, however, of the relative advantages and disadvantages to the parties which are concomitant with this substitution for the judicial process. As one noteworthy commentator has observed,

> ... (W)hile an insured may derive a benefit in earlier disposition of his controversy by arbitration, he loses the benefit of a jury trial, which ordinarily he, or at least his counsel, would prefer. He may be subjected to several hearings—first, before the arbitrator, or, even before that, a suit by the insurer for declaratory judgment or an action to stay arbitration; then, after a full arbitration hearing, with its attendant delays, either he or his adversary must present a petition to a court, which may hold other hearings, with a possibility of appeal therefrom to a reviewing court. Certainly this is no simple and summary remedy. He would much prefer a single lawsuit where he can sue everybody— the uninsured motorist (even if substitute service of process is required), any other parties to the collision, and his own insurer under the policy ... If he could sue at law, the State furnishes the emolument of the judge and jurors. In a single suit, he can secure able counsel acting upon a contingent fee. Few lawyers care for the prospects of this hydra-headed monster where the potential of ultimate recovery is modest, at best. And when an insured must contemplate the mortgaging of his future because of the expenses he must bear, he is likely to shrug his shoulders and accept any pittance which is offered. This is not consistent with justice.
>
> If this system is now so deeply imbedded in our jurisprudence that a better approach cannot be found, then at least some effort should be made to eliminate the fundamental unfairness which is so apparent. Since the insurer desires this disposition instead of facing a jury trial (and since the insured ordinarily still will face the prospect of attorney's fees in the suit against the tortfeasor), all expenses—irrespective of the outcome—incident to the arbitration should be borne by the insurer. This should include all costs, including the arbitrator's fees, witnesses (in view of a probable double appearance), depositions, and a reasonable attorney's fee. So far as penalties are concerned, that would depend upon the usual tests of improper conduct; interest would depend upon prevailing state law. Unless these things are done, the adhesion factors of these agreements are as painful as a mustard plaster to the one who had no part in working out these arrangements. [8D *Appelman, Insurance Law and Practice,* § 5124 at 124–125 (1981)]

It cannot be denied that these observations disclose much about the meaning of the arbitration process as it affects the interested parties thereto. In the end, however, this court is constrained to recognize that it must act within the limits of the

law. Plaintiff has agreed to bear the administrative costs of arbitration as a condition of obtaining the coverage purchased from the defendant-insurer. The court has been directed to no authority which would justify disregard for that agreement. Accordingly, plaintiff's request to recover the $100 fee paid as a condition for submitting her claim to arbitration is denied.

## Conclusions

The arbitrator's award of October 7, 1982, which is the subject of this summary proceeding, will be confirmed in accordance with the provisions of *N.J.S.A.* 2A:24–7. That award shall bear interest at a rate of 12% a year from January 25, 1982, the date plaintiff's claim was submitted to arbitration. Plaintiff shall also recover the $75 paid as a filing fee for the commencement of this summary proceeding. Plaintiff shall not, however, recover the $100 administrative fee paid as a condition of submitting her claim to arbitration.