TOWNSHIP OF JEFFERSON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. TORO DEVELOPMENT CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 7, 1985—Decided March 14, 1985.

Before Judges McELROY and DREIER.

*Lawrence P. Cohen* argued the cause for appellant (*Cohen & Kron,* attorneys; *Lawrence P. Cohen,* of counsel and on the brief).

*Steven E. Brawer* argued the cause for respondent (*Brawer & Green,* attorneys; *Steven E. Brawer,* of counsel, *Marc E. Alterman,* on the brief).

The opinion of the court was delivered by

DREIER, J.A.D.

Plaintiff appeals from a judgment entered by the trial judge in the Chancery Division confirming an arbitration award against plaintiff. The total payments under the contract, as initially amended, were $584,252.75. The one acknowledged change order removing certain pavement items reduced the final contract price to $467,247.35. Defendant claimed entitlement to $395,403.58 in additional compensation described in detail in the brief and written summation presented to the arbitrators. The Township in its letter brief to the arbitrators claimed liquidated damages and additional costs and offsets in the total amount of $129,567.97. After 19 days of hearings, the arbitrators, having the benefit of the parties' written briefs and summations, made a net award to defendant in the amount of $280,000. This award was confirmed by the trial court in an order dated May 1, 1984.

The trial judge in his oral opinion of February 24, 1984 expressed dismay over the lack of factual findings by the arbitrators, but noted that the arbitrators were under no statutory or regulatory direction to provide such information at the time of their award. The trial judge found specifically that the award was "within the broad parameters of what one might expect as a sensible result from this kind of a factual context." Although the contractual language might have indicated a different result from that reached by the arbitrators, the trial court found that the arbitrators could have determined that the contract had been modified by the conduct of the parties.

The trial judge was correct in his conclusion that arbitrators are not required to articulate the reasons for their award. *N.J.S.A.* 2A:24–7 requires only that the award be made in writing. An award may not be vacated merely because "the arbitrators gave no details in the award." *Tave Construction Co. Inc. v. Wiesenfeld*, 82 *N.J.Super.* 562, 566 (Ch.Div.1964), aff'd o.b. 90 *N.J.Super.* 244 (App.Div.1966). Judge Stanton applied the correct standard for examining an unexplained

arbitration award as enunciated in *Fred W. Donnelly, Inc. v. Unit One Lawrence*, 171 *N.J.Super.* 30, 33–34 (App.Div.1979), certif. den. 82 *N.J.* 298 (1980).

In *Donnelly*, the issue was whether a contractor had improperly constructed a roof. The arbitrator awarded $41,160 against the contractor, without findings of fact. The contractor attempted to vacate the award, claiming that the arbitrator had ignored the parties' written contract, a lease. On appeal from the Law Division's confirmation of the arbitration award, the contractor complained that the Law Division should have ordered the arbitrator to make factual findings. The Appellate Division first found that it had the power under certain circumstances to order an arbitrator to set forth factual findings and legal conclusions, citing *Kearny PBA Local #21 v. Kearny*, 81 *N.J.* 208, 219–220 (1979). It noted, however, that in close cases the court should follow a "policy of indulgent treatment of arbitrators and their awards." *Donnelly*, 171 *N.J.Super.* at 33 (quoting *LaStella v. Garcia Estates*, 66 *N.J.* 297, 303 (1975)). The court further stated that before a court may consider extrinsic evidence affecting an arbitration award the

> [c]ourt must first conclude that the potential for the arbitrator's error is greater than the potential for a correct result. Where a court finds legal and factual conclusions that could sustain the award, there is no justification for examination of extrinsic evidence and no justification to compel an arbitrator, who is not otherwise required, to set forth his findings of fact and conclusions of law. *Kearny PBA Local #21 v. Kearny*, 81 *N.J.* at 219–220. [*Id.*, 171 *N.J.Super.*, at 33–34].

The *Donnelly* court found that the arbitrator there could have interpreted the lease to show that the parties did not intend to exclude damages caused by defendant, and thus the award could be considered unimpeachable.

The trial court in reviewing the arbitrator's award in this case analyzed the parties' agreement and found that notwithstanding the requirement for change orders in the contract,

> [p]arties more often than not do not follow the contractual provisions with respect to change orders and modifications of the job once the job has been undertaken ... [G]iven the gross circumstances of this case, it is fairly

arguable that the result achieved in this case is a sensible result. Experience is such that we know that it is implicit in the circumstances that there could have been a course of conduct which amply justified departure from the strict terms of the contract....

We have reviewed the trial judge's decision, bearing in mind that "[a]rbitration is viewed favorably by our courts, and every doubt is resolved in favor of the validity of the award." *Ukrainian Nat. Urban Renewal v. Muscarelle, Inc.*, 151 *N.J. Super.* 386, 396 (App.Div.), certif. den., 75 *N.J.* 529 (1977). We may vacate an arbitration award only if we find that one of the grounds set forth in *N.J.S.A.* 2A:24–8 applies:

a.  Where the award was procured by corruption, fraud or undue means;

b.  Where there was either evident partiality or corruption in the arbitrators, or any thereof;

c.  Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;

d.  Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.

When an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

Plaintiff urges that "undue means" in subparagraph a. and the exceeding of powers noted in subparagraph d. provide two bases to vacate this award. We do not know which of defendant's claims or plaintiff's counterclaims for credits were accepted or rejected by the arbitrators; we know only that the net claim of defendant for $280,000 was allowed.

Given the dollar amount of the claims we realize that the arbitrators of necessity allowed a substantial portion of defendant's claims for additional work necessitated by unanticipated subsurface conditions. It was acknowledged that the parties did not follow the procedure set forth in the agreement to resolve these differences. Plaintiff claims that the conditions were not brought to its attention until most of the alleged additional work had been performed by defendant. Defendant contends that it could not follow the change order procedure,

since it was informed early in the job that the mortgagee would approve no change orders and that plaintiff, therefore, would not sign such orders.

Whether the arbitrators determined that plaintiff was estopped from insisting on the change order procedure, whether defendant was entitled to be paid for the reasonable value of the additional work on a *quantum meruit* basis and not pursuant to the contract, or whether for some other reason the parties' conduct authorized an avoidance of the contract procedure, we do not and cannot know. We do know that section 17 of the contract set forth a procedure for the processing of change orders. Once the subsurface conditions had been called to plaintiff's attention it had an obligation to investigate and to effect "an equitable adjustment." The parties had provided further that the contract itself at such point "shall be modified by a CHANGE ORDER." If, notwithstanding this contract condition, plaintiff had informed defendant that no change orders, even those absolutely required, would be signed, plaintiff could have been found by the arbitrators to have been barred by estoppel, waiver or unclean hands from demanding strict compliance with the change order portions of the contract.

Plaintiff also argues that the amounts found due to defendant should have been limited by the unit price provisions of the contract. We note, however, that the value of the additional work is a subject uniquely suited to arbitration where, as here, the arbitrators have been specifically chosen because of their background and experience in the industry.

Plaintiff's strongest point is that any amendment requiring a substantial increase in the amount it must pay could not legally have been made without a change order under the provisions of the public bidding statute and the regulations of the Local Finance Board and the Division of Local Government Services. Under *N.J.S.A.* 52:27BB-32 the Local Finance Board has adopted mandatory procedures to be followed by all local

units (including plaintiff) under the Local Government Supervision Act of 1947, amended (*N.J.S.A.* 52:27BB–1 *et seq.*), and the Local Public Contracts Law (*N.J.S.A.* 40A:11–1 *et seq.*). These regulations, effective April 15, 1977, appear at *N.J.A.C.* 5:30–14.4. Section (b)1 defines a change order as:

A lawfully prepared and properly authorized document which directs and authorizes a contractor ... performing work for or supplying materials and supplies to a local unit pursuant to a contract to change the work, service or materials to be performed, rendered or furnished from that originally specified or estimated and to correspondingly change the payment due therefor.

Subsection (f) of this regulation reads as follows:

(f) Change orders for construction, reconstruction and major repair contract rules are:   '

1.  Change orders should be limited to the following types:

i.  Emergency occurrences affecting health, safety or welfare;

ii.  Unforeseeable problems;

iii.  Minor modifications to effect economies, improve service or resolve minor problems with affected property owners;

2.  Change orders should not be made for the following:

i.  Changes that materially expand upon the size, nature or scope of the project as it was originally described in the bid specifications;

ii.  Extra work that could reasonably be effectuated by a separately bid contract without unduly disrupting the basic work or imposing adverse cost consequences;

3.  Procedure:

i.  The governing body shall be required to authorize all change orders except:

(1) When an emergency condition requires immediate action, the contracting agent designated by the governing body to handle emergency purchases per N.J.S.A. 40A:11–6 may authorize the necessary actions to be taken, but only to the extent necessary to meet the emergency. In such cases, the action taken shall be reported promptly to the governing body, which shall then act to ratify the action and authorize payment. The procedures prescribed in subparagraph ii of this paragraph shall be utilized;

(2) Minor field (site) modifications, to the extent normally permitted (method is at local option) by the governing body and appropriate administrative officials, provided that they do not affect the overall scope of work of the contract, may be authorized by the contracting agent (for example, additional fill stone needed, modifications of footings, additional rock blasting). However, if these change orders will result in an inability to complete the full contracted scope of services without increasing the contracted price, the governing body must approve in advance;

(3) If the awarded contract includes a sum for contingencies, said sum should be encumbered against the appropriation at the outset, and charges against

that amount may be authorized by the contracting agent, provided that the sum so included does not exceed 20 per cent of the overall contract;

ii. Governing body approval process:

(1) The chief executive officer or other authorized administrative officer of the governmental unit shall file with the governing body a request for the change order, stating the facts involved and indicating that the proposed change order may be allowed under these regulations. If the request and justification are prepared by other than an official of the governmental unit, it must be countersigned by the chief executive officer or other designated official;

(2) The governing body shall take such steps as it may find appropriate to assure that a change is necessary and that it will actually be carried out;

(3) The governing body shall be assured that adequate appropriations are available in accordance with section 5 of this subchapter;

(4) The governing body shall then pass a resolution authorizing a written amendatory contract to be entered into covering the change(s) to be made. The exact form of this amendatory contract shall be at the discretion of the local attorney;

(5) The resolution described above should be passed promptly, and change order authorizations should not wait until the completion of the entire project.

From our review of the record it appears that these regulatory restrictions had not been argued below, either before the arbitrators or the trial judge. They appear to provide that no payment can be made until a change order is authorized by the governing body, and only after the governing body is assured that adequate appropriations are available to pay the amount covered by the change orders. At oral argument we inquired of counsel whether there was a sufficient appropriation to pay the arbitrators' award or court judgment, and we were assured that not only are such funds available but they have been placed in escrow. Plaintiff, therefore, would not be forced to wait until an amendatory bonding ordinance could be passed or the amount otherwise budgeted.

Since the Administrative Code requires governing body approval, in lieu of the procedure contained in *N.J.A.C.* 5:30–14.-4(f)3 ii, the governing body can by resolution now authorize the amendment of the contract to implement the award and judgment. The first three steps in the governing body approval process would be unnecessary in this case, since the adjudication based upon sworn testimony is a reasonable alternative to

the first and second steps, and the deposit of the disputed sum in escrow removes any doubt as to the availability of appropriated funds required by the third step.

We realize that parties to a contract "are presumed to have contracted with reference to existing law." *Redbank Bd. of Ed. v. Warrington,* 138 *N.J.Super.* 564, 568 (App.Div.1976). Our sanctioning of the procedure set forth in this opinion should not be considered precedent for a general avoidance of the administrative regulations. We have noted that the applicability of the regulations had not been raised until the eleventh hour. Both sides, we assume, entered into the arbitration process in good faith and it would not serve the public interest for the 19 arbitration hearing days and the post-arbitration efforts of the parties to have been in vain because a threshold administrative procedure had been omitted. Even appreciating as we do that estoppel "is not applied as readily against the public as against private persons," *Skulski v. Nolan,* 68 *N.J.* 179, 198 (1975), estoppel may be applied against a public body "where the interests of justice, morality and common fairness clearly dictate that course." *Gruber v. Raritan Tp.,* 39 *N.J.* 1, 12 (1962). In *Summer Cottagers' Ass'n of Cape May v. Cape May,* 19 *N.J.* 493, 504–505 (1955) the court noted:

> There is a distinction between an act utterly beyond the jurisdiction of a municipal corporation and the irregular exercise of a basic power under the legislative grant in matters not in themselves jurisdictional. The former are *ultra vires* in the primary sense and void; the latter, *ultra vires* only in a secondary sense which does not preclude ratification or the application of the doctrine of estoppel in the interest of equity and essential justice ... But there cannot be such relaxation of the conditions laid down in the grant of the power as to defeat the public policy intended to be served. The question is essentially one of legislative intention. Are the conditions made prerequisite to the very existence of the power—a limitation of the power itself?

It would be patently unfair for defendant to have performed $280,000 extra work with the full knowledge of the municipality which then engaged with defendant in the lengthy arbitration proceeding, with the disputed amount held in escrow, only to have a legal impediment raised at the time for confirmation of the award. Implicit in this process was the representation that

payment would be forthcoming if the procedure resulted in a net award to defendant. Plaintiff is estopped from claiming otherwise.

■ The trial court permitted plaintiff to have a brief interest-free period, reasoning that the prevailing party should not "expect immediate payment." Plaintiff, therefore, was given "a month or so to get organized." Therefore, rather than December 22, 1983 (the date the last arbitrator signed the award), the trial judge chose February 1, 1984 as the date from which interest would run. Although *R.* 4:42–11(a) directs interest from the date of the entry of a judgment "except as otherwise ordered by the court and except as may be otherwise provided by law," interest on an arbitration award usually relates back to the date of the award. *Ukrainian Nat. Urban Renewal v. Muscarelle Inc.,* 151 *N.J.Super.* at 402; *Reliable Water Co. v. Monroe Tp. Mun. Util.,* 146 *N.J.Super.* 291, 293–294 (App.Div.1977). *Cf. Rova Farms Resort v. Investors Ins. Co.,* 65 *N.J.* 474, 506–507 (1974), explaining that such interest is compensatory rather than penal in nature and runs from such time as a definite sum is established.

■ We acknowledge that the court rule permits a judge to order otherwise due to the special nature of the situation before him. In this case the trial judge was confronted with no special situation justifying a departure from the usual rule. Had the parties settled for a specified sum with the implied condition that the funds would be expeditiously secured and paid over, or if the amount to be paid was proceeds of a nonproductive asset which was to be sold, so that the paying party was not retaining funds which generated income to the date set for payment, or if other matters were present that warranted a departure from this interest rule, a trial judge could so direct. Such special circumstances being absent here, we modify the judgment confirming the arbitration award only so that interest will run from December 22, 1983 (rather than February 1, 1984) to the date of payment.

Except as modified herein, the judgment entered by the trial court is affirmed.