577 A.2d 534

APEX REALTY, INC., A NEW JERSEY CORPORATION, PLAIN-
TIFF–APPELLANT, v. SCHICK REALTY, INC., A NEW JERSEY
CORPORATION; DEFENDANT–THIRD PARTY PLAINTIFF–
RESPONDENT, v. THE GREATER WILDWOOD–CAPE MAY
COUNTY BOARD OF REALTORS, MARINA DOLHANCEY,
WILLIAM H. DONAHUE AND HARRY HAND, JOINTLY, SEV-
ERALLY AND IN THE ALTERNATIVE, THIRD PARTY DE-
FENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued November 28, 1989—Decided July 19, 1990.

Before Judges LONG, GRUCCIO and LANDAU.

*George B. Neidig, Jr.* argued the cause for third-party defen-
dants-appellants.

*Horn, Kaplan, Goldberg, Gorny & Daniels,* attorneys for plaintiff-appellant, did not file a brief but relied upon the brief filed by third-party defendants-appellants.

*Kenneth E. Calloway* argued the cause for respondent.

The opinion of the court was delivered by

GRUCCIO, J.A.D.

Third-party defendants The Greater Wildwood–Cape May County Board of Realtors and its arbitrators, Marina Dolhancey, William H. Donahue and Harry Hand (Board) appeal from an interlocutory order of the Superior Court, Law Division, requiring them to formulate written findings of fact and conclusions of law regarding their resolution of an issue of contract construction in favor of plaintiff Apex Realty, Inc. (Apex) and against defendant-third-party plaintiff, Schick Realty, Inc. (Schick). We reverse the decision of the Law Division and reinstate the Board's order.

On September 1, 1987, Schick entered into an exclusive listing agreement with Chester and Mildred Wojton (sellers) for the sale of their 20–acre parcel of developable land in Fishing Creek, New Jersey. The agreement listed the parcel's price as $450,000 and provided for the payment of a $10,000 commission to Schick upon sale. At the same time, Schick and the sellers signed a waiver of broker cooperation agreement (waiver agreement) which provided:

This property is to be marketed only through the efforts of the Listing Broker. This listing is not to be published in any multiple listing service. I will only consider offers on this property which are obtained by, and I will only allow showings of this property to be conducted by the Listing Broker or his or her duly authorized representatives. THE LISTING BROKER IS HEREBY DIRECTED NOT TO COOPERATE WITH ANY OTHER BROKER.

By signing below, the parties hereto confirm that no pressure or undue influence has been exerted upon the owners as to how this property is to be marketed by the Listing Broker.

The owner(s) further confirm receipt of a fully executed copy of the listing agreement on this property, and of this Waiver of Broker Cooperation form.

On December 21, 1987, the property was sold to Bowman Builders, Inc. The principal of this corporation, John E. Bowman, is also the principal of Apex. The agreement of sale contained the following provision:

Brokers Commission. Seller represents that this contract did not come about through the assistance of a real estate broker or salesman and if any person makes any claim for commission by reason of this contract, then seller will defend all such claims and pay any damages awarded as a result thereof. Should buyer be called upon to defend or make payment of any such claims, then seller agrees to indemnify and save buyer harmless from same.

Sellers paid Schick the $10,000 commission provided for in the listing agreement. Apex made a claim for half of the commission. As members of the Board, both Apex and Schick had previously agreed to submit any commission dispute to arbitration. Apex filed a request and agreement to arbitrate with the Board. Schick then filed a response and agreement to arbitrate. On November 3, 1988, the Board's arbitrators conducted an evidentiary hearing to determine whether Apex was entitled to half of Schick's commission. Four days later the arbitrators filed a decision awarding Apex half of Schick's commission and requiring Schick to pay Apex the $5,000 within 20 days. The award was printed on a boiler-plate form and contained no findings of fact.

Schick refused to pay Apex. On January 18, 1989, Apex filed suit in the Superior Court, Law Division, seeking an order confirming the arbitration award and compelling payment under its terms. Schick filed an answer and third-party complaint against the Board alleging, *inter alia,* that the arbitrators' failure to make specific findings of fact and conclusions of law constituted misconduct and warranted the vacation of the award.

Apex moved for summary judgment. After oral argument the judge granted the motion and ordered the Board to formulate written findings of fact and conclusions of law regarding the applicability of the waiver agreement to the issues presented. We granted the Board's motion for leave to appeal.

The Board contends that the trial judge erred in requiring it to state the findings of fact and conclusions of law underlying its decision. We agree.

Under *N.J.S.A.* 2A:24–2, "[t]wo or more persons by their agreement in writing may submit to arbitration a controversy existing between them at the time of the agreement, whether the controversy arises out of a contract or the refusal to perform the whole or a part thereof or out of any other matter." A provision in a written contract to settle a controversy by arbitration is valid and enforceable. *N.J.S.A.* 2A:24–1.

Our Legislature has consistently encouraged arbitration. *Barcon Assocs. v. Tri–County Asphalt Corp.*, 86 *N.J.* 179, 186, 430 *A.*2d 214 (1981). In light of the Legislature's sanction and the strong public policy considerations in favor of arbitration, our courts have also endorsed the procedure. *Ibid.; see also County College of Morris Staff Ass'n v. County College of Morris,* 100 *N.J.* 383, 390, 495 *A.*2d 865 (1985).

In order for arbitration to achieve its goal of speedy, economical and final determinations, courts must minimize their interference with arbitrators' decisions. *Barcon Assocs.,* 86 *N.J.* at 187, 430 *A.*2d 214. Therefore, the Legislature requires the vacation of an arbitration award only in certain narrowly defined circumstances:

a. Where the award was procured by corruption, fraud or undue means;

b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;

c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any misbehaviors prejudicial to the rights of any party;

d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made. [*N.J.S.A.* 2A:24–8].

In vacating the award here, the Law Division judge did not find any of the above criteria were present. Rather, he held that implicit in the policy of encouraging arbitration is "the clear mandate" that the process "be carried out in such a

manner as to inspire public confidence." He held that in order to inspire such confidence, the Board must state its findings of fact and conclusions of law on the record.

This holding, however, ignores the long-established rule that the lack of a statement of reasons in an arbitration award is not grounds for vacation of the award. *Jefferson Tp. v. Toro Development Corp.*, 199 *N.J.Super.* 459, 462, 489 *A.*2d 1212 (App.Div.1985); *Korshalla v. Liberty Mutual Ins. Co.*, 154 *N.J.Super.* 235, 238, 381 *A.*2d 88 (Law Div.1977); *Tave Constr. Co., Inc. v. Wiesenfeld*, 82 *N.J.Super.* 562, 566, 198 *A.*2d 486 (Ch.Div.1964), aff'd o.b., 90 *N.J.Super.* 244, 217 *A.*2d 140 (App. Div.), certif. den., 47 *N.J.* 84, 219 *A.*2d 419 (1966). The governing statutes require only that the award be in writing and that it not be based on fraud, corruption, partiality or misconduct. *N.J.S.A.* 2A:24–7 and –8. They do not require the arbitrators to set forth the reasons for their decision. *See N.J.S.A.* 2A:24–1 through –11. Apex and Schick signed agreements to arbitrate their dispute when it first arose. Had they wished, they could have included a provision requiring the arbitrators to state their reasons for their award. *Korshalla*, 154 *N.J.Super.* at 238, 381 *A.*2d 88. As they did not, the statutes are controlling and the award must stand.

This holding is consistent with the Legislature's fostering of arbitration as an efficient and speedy alternative to protracted lawsuits. As the Supreme Court noted in *Barcon*, arbitration " 'is meant to be a substitute for and not a springboard for litigation.' " 86 *N.J.* at 187, 430 *A.*2d 214 (quoting *Korshalla*, 154 *N.J.Super.* at 240, 381 *A.*2d 88).

Reversed and remanded for entry of an order consistent herewith.