132 N.J. Super. 365 (1975)
333 A.2d 580
FREDERICK W. HARSEN AND GEORGE R.A. JOHNS, PARTNERS DOING BUSINESS AS AND TRADING UNDER THE FIRM NAME AND STYLE OF HARSEN & JOHNS, PLAINTIFFS,
v.
THE BOARD OF EDUCATION OF THE TOWNSHIP OF WEST MILFORD IN THE COUNTY OF PASSAIC, A SCHOOL DISTRICT, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided January 31, 1975.
*369 Mr. Emanuel Eschwege for plaintiffs.
Mr. Irving C. Evers for defendant (Messrs. Parisi, Evers & Greenfield, attorneys).
DOAN, J.S.C.
Plaintiffs sue for entry of judgment on an arbitration award handed down June 12, 1974 in the amount of $42,015.04 plus fees totaling $197.27 to reimburse plaintiffs for sums previously advanced to the American Arbitration Association.
The following facts are uncontested. The parties on June 10, 1971 entered into a contract for architectural services to be rendered by plaintiffs to defendant regarding construction of a new school. Dispute arose between the parties over billings submitted by plaintiffs, and on March 26, 1973 plaintiffs instituted proceedings before the American Arbitration Association pursuant to Article 10 of the June 10, 1971 contract. That the board of education had specific statutory authority to enter into an agreement containing a provision for the submission of disputes and controversies for determination by arbitration is not disputed. N.J.S.A. 18A:11-2(a). Defendant submitted to the jurisdiction of the association, appeared, answered and counterclaimed.
A series of hearings, totaling seven full days, was held before a tribunal of arbitrators duly appointed by the association between October 30, 1973 and April 23, 1974, at which both sides had opportunity to present evidence, cross-examine parties and witnesses, and argue such legal matters as they deemed fit. There is no contention made by defendant that it was not given ample opportunity to be heard or that the arbitrators had no jurisdiction.
*370 On June 12, 1974 the above-mentioned award in plaintiffs' favor, in the amount of $42,015.04, was handed down. This was $10,298.49 less than had been demanded by plaintiffs. It was also $23,546.62 greater than the $18,468.92, the admitted remainder of the funds authorized for the project by the school district's voters, creating, as will be seen, the prime issue to be resolved. Defendant's cross-demands were denied in toto. The award omitted to detail the reasoning supporting the decisions reached. No part of the award has been paid by defendant, despite its admission at the argument of being indebted to plaintiffs for said $18,468.92.
Plaintiffs filed this action July 23, 1974 within the statutory limitation period, and answer and counterclaim were filed August 21, 1974. The counterclaim seeks a declaration of the invalidity of the award and to have it set aside. Plaintiffs presently seek entry of summary judgment confirming the arbitrators' main award and entering judgment thereon plus interest from June 13, 1974, and the same as to the award for reimbursement of fees plus interest from June 15, 1974.
A few prefatory comments concerning the nature of arbitration and the role of the court therein are appropriate.
The ancient practice of arbitration [i]n its broad sense, * * * is a substitution, by consent of the parties, of another tribunal for the tribunal provided by the ordinary processes of law. The object of arbitration is the final disposition, in a speedy, inexpensive, expeditious, and perhaps less formal manner, of the controversial differences between the parties. "The submission * * * is the commission of the arbitrator. By force of it he becomes a judge, with absolute power over the things submitted to his judgment." (citations omitted) [Carpenter v. Bloomer, 54 N.J. Super. 157, 162 (App. Div. 1959) citations omitted]
Cf. Local Union 560 v. Eazor Express, Inc., 95 N.J. Super. 219, 227 (App. Div. 1967). Submission to arbitration is contractual, the parties being bound by the arbitration only to the extent they have so agreed. Wm. J. Burns, Inc. *371 v. N.J. Guards Union, 64 N.J. Super. 301, 307 (App. Div. 1960). Likewise, the scope of the arbitrators' jurisdiction and authority is delineated by the terms of the parties' agreement, Wm. J. Burns, supra, and the arbitrator may not rewrite contract terms for the parties. Cf. Belardinelli v. Werner Continental, Inc., 128 N.J. Super. 1, 6-7, 11 (App. Div. 1974).
Where properly functioning within the agreement terms, however, "the essence of arbitration is, of course, that the arbitrators decide both the facts and the law," Daly v. Komline-Sanderson Engineering Corp., 40 N.J. 175, 178 (1963); Carpenter v. Bloomer, supra. The forum chosen by the parties operates as a trial court, and judicial review of the awards rendered by it is extremely narrow and restricted to ascertaining whether one of the situations set forth in N.J.S.A. 2A:24-8 exists. Daly v. Komline-Sanderson Engineering Corp., supra; Local Union 560 v. Eazor Express, Inc., supra.
N.J.S.A. 2A:24-8 pertinently reads:
The court shall vacate the award in any of the following cases:
a. Where the award was procured by corruption, fraud or undue means;
b. Where there was either evident partiality or corruption in the arbitrators, or any thereof * * *;

* * *
d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter was not made.
Clearly, the arbitrators' factual determinations concerning the merits of the controversy are not reviewable as such by the court. Further, only issues of fact bearing on a statutory criteria will suffice for withholding of summary judgment.
The term "undue means" in N.J.S.A. 2A:24-8(a) has been defined by decisional law to include
* * * where the arbitrator meant to decide according to law, and clearly had mistaken the legal rule and the mistake appears on the *372 face of the award or by the statement of the arbitrator. * * * [Held v. Comfort Bus Lines, Inc., 136 N.J.L. 640, 641 (Sup. Ct. 1948)]
Previous case law triggered this rule only where the arbitrator made clear he intended to decide the case according to the law, rather than exercise his right to ignore it and decide the matter on his own view of the equities, cf. Anco Products v. T.V. Products Corp., 23 N.J. Super. 116, 123 (App. Div. 1952), and exempted from its coverage situations where "the applicable rule of law is doubtful," Collingswood Hosiery Mills v. Amer., etc., Workers, 31 N.J. Super. 466, 471 (App. Div. 1954). The recent case of Brooks v. Pa. Mfrs. Ass'n Ins. Co., 121 N.J. Super. 51, 54-55 (App. Div. 1972), mod. on other grounds 62 N.J. 583 (1973), has, however, worked changes therein. The Appellate Division there found an intention on the part of the arbitrator to decide the case in accordance with applicable law merely because "there is nothing in the record below to suggest otherwise," creating a presumption in favor of such intent's existence absent affirmative indication to the contrary. Furthermore, the question of law was a novel one in this State, no prior case on it previously having been reported. The court unhesitatingly undertook review of the award's propriety:
Thus, the issue to be considered is whether the arbitrator as a matter of law, mistakenly allowed a credit for the present value of a prospective future award in a pending workman's compensation action. 121 N.J. Super., at 55.
The Supreme Court's failure to even mention the issue of reviewability leads one to the conclusion that where no affirmative indication exists that the arbitrator was not utilizing the applicable law, or attempting to, and the legal question is res nova in this State, the court reviewing the award is to entertain and decide the merits of the legal question involved and evaluate the award's legitimacy against the resolution thereof.
*373 In determining the validity of an award when challenged, however, it must be borne in mind that "once an award is made, there should be much reluctance at interfering with it. So far as may be, an arbitration should be an end to litigation, not the beginning of it," Collingswood Hosiery Mills v. Amer., etc., Workers, supra, 31 N.J. Super. at 473. "In line with the design of the parties to have their disputes speedily, economically, and finally settled, every intendment is indulged in favor of the award and it is subject to impeachment only in a clear case", Carpenter v. Bloomer, supra, 54 N.J. Super. at 168.
Turning to the case at bar, defendant's pleadings, supporting papers and oral argument reveal four grounds which allegedly require nonconfirmation and vacation of the award. These are: (a) evident partiality on the part of the arbitrators; (b) the failure of the arbitrators to state the reasoning behind the award; (c) the arbitrators exceeded their power by rewriting the contract, and (d) the award is contrary to law in that it will result in defendant making payments on account of the project, which is the subject matter of the disputed contract, in excess of the funds authorized for it by the district's voters. These will be considered in the above sequence.

I
The partiality question is easily disposed of since it is presented as a "mere sworn conclusion of ultimate facts without basis or supporting affidavits," and thus insufficient to withstand a motion for summary judgment. James Talcott, Inc. v. Shulman, 82 N.J. Super. 438, 443 (App. Div. 1964). This is especially so in light of the arbitrators trimming plaintiffs' demands by over $10,000 and the rule that "every intendment favors the validity of the award and the impartiality of the arbitrators," Central Co. v. Uvalde Co., 82 N.J. Eq. 246, 258 (Ch. 1913).

*374 II
Defendant's position regarding the absence of a reasoned opinion by the arbitrators also lacks merit. In Tave Construction Co., Inc. v. Wiesenfeld, 82 N.J. Super. 562 (Ch. 1964), aff'd o.b. 90 N.J. Super. 244 (App. Div. 1966), it was held (at 566) that "the mere fact that the arbitrators gave no details in the award does not justify the vacation thereof." That the court there had the transcripts of the arbitration hearings and the court ordered depositions of the arbitrators is immaterial. N.J.S.A. 2A:24-7, covering the form of the award, requires only that "the award must be in writing and acknowledged or proved in like manner as a deed for the conveyance of real estate and delivered to one of the parties or his attorney." This was done here, and defendant does not claim otherwise. The arbitration statute, N.J.S.A. 2A:24-1 et seq., contains no requirement that the arbitrators issue a written opinion detailing their reasoning, and counsel nor the court have uncovered a case so holding. The award is not to be nullified for absence thereof.

III
Defendant's allegations, that the arbitrators rewrote the contract, is also without substance. A contract may provide an arbitrator with the power and duty to interpret its terms. As was said in a slightly different context:
Where the arbitrator of disputes over the application or interpretation of a collective bargaining is provided, the court must determine whether a bonafide dispute exists and this is a question of law. [Mach. Printers, etc., United States v. Merrill, etc., Works, Inc., 12 N.J. Super. 26, 31 (App. Div. 1951)].
Where the contract provides for arbitration of disputes over contractual language and a debatable question exists, the court is bound by the arbitrators' decision. As stated in Standard Oil, etc., Union v. Esso Research Co., 38 N.J. Super. 106, 119 (App. Div. 1955), deciding a suit seeking compulsion of arbitration:
*375 It is no part of our function to decide the merits of the controversy. We are limited to a determination of whether or not the interpretation of the contractual language contended for by the party seeking arbitration is reasonably debatable in the minds of ordinary laymen. If it is frivolous in the legal sense, that is opposed to the manifest meaning of the compact then arbitration must be denied. But if it is fairly arguable, we are bound by the consent of the parties to employ another forum for the adjudication of their dispute and we must grant an order to proceed to arbitration.
The clause in the contract here under consideration provides for "arbitration of all questions under this agreement" and clearly includes disputes as to the meaning of its language. Defendant's claim of rewriting centers on the arbitrators awarding plaintiff a fee for providing a project representative in paragraph 5(c) of the contract. That paragraph provides that "the architect shall be compensated therefor as mutually agreed upon between the owner and the architect as set forth in another section of this agreement."
Defendant contends that par. 11 was the other section referred to there. It provides that "the architect's fee shall be at a rate stated below: the basic rate will apply to the separate contracts required * * * for (1) General Construction of Structure, (2) Plumbing, (3) Heating and Ventilating, (4) Electrical Work, and (5) Structural Steel and Ornamental Iron Work. * * * The base fee is to be 6%." Plaintiff contends that this was not to be applied to the project inspector's compensation and that the added clause mentioned in 5(c) was inadvertently omitted in the writing's drafting. Plaintiff points to paragraph 7, which states that the construction costs "shall not include any architect's * * * fees or reimbursements or the cost of a project inspector," as indicative of the parties' realization of the distinctiveness of the architect's basic fee and compensation for the project representative. The matter was fully presented before the arbitrators.
It is plain that interpretation of the contractual language pertinent to this dispute is "reasonably debatable in the minds of ordinary laymen," Standard Oil, etc., Union v. *376 Esso Research Co., supra, particularly when there is no contract involved in project representation to which to apply the 6% base rate. Applying it to plaintiffs' billings, as defendant suggests, seems somewhat baseless. There being a debatable issue and that issue being within the scope of the arbitrators' powers under the contract, this court is bound by the adjudication of the forum selected by the parties. Id.
That no clause expressing the mutually agreed rate of compensation for supplying the project representative found its way into the writing, does not transform the arbitors' award from contractual construction to contract rewriting:
* * * under general contract law terms may be implied in a contract not because they are reasonable, but because they are necessarily involved in the contractual relationship so that the parties must have intended them and have only failed to specifically express them because of sheer inadvertence or because the term was too obvious to need expression. * * * Where fairness and justice require, even though the parties to a contract have not expressed an intention in specific language the court may impose a constructive condition to accomplish such a result when it is apparent that it is necessarily involved in the contractual relationship. [Palisades Properties, Inc. v. Brunetti, 44 N.J. 117, 130 (1965)]
Terms may be implied when it appears that the parties must have intended them and have only failed to express them, or because they are necessary to give business efficacy to the contract as written. Marini v. Ireland, 56 N.J. 130, 143 (1970). Such a situation was presented the arbitrators once the contract had been interpreted to read that paragraph 11 is not applicable to paragraph 5(c), an interpretation the arbitrators had the authority to, and clearly from the award did, make. Their action was within the canons of construction enunciated above and constitute no ground for vacation of their award.
Likewise, the dispute between the parties over plaintiffs' entitlement to fees for design work either rendered unusable or necessitated by the conversion of the project from modular engineering to a conventional masonry-brick structure *377 also involved matter of fact and contract interpretation allocated to the arbitrators' domain.
Plaintiffs claimed the original system engineered design and cost estimate submitted by them was at defendant's instigation and, in part, merely a revision of estimates made by U.S. Steel and Imperial Equipment Corp. with whom defendant had had prior dealings. When bids thereon failed to fall within the authorized funding, plaintiffs advised that defendant could switch to conventional construction and bring the project in within budget. This was done, resulting in added design work on plaintiffs' part and coordination of the two sets of plans throughout the project's life.
Plaintiffs demanded $14,817.60 for these labors under the "Extra Services and Special Cases" clause of the contract. It pertinently reads:
If the architect is caused extra drafting or other expense due to changes ordered by the owner * * * he shall be equitably paid for such extra expense and the service involved. * * *
* * * If any work designed or specified by the architect is abandoned or suspended, in whole or in part, the architect is to be paid for the service rendered on account of it.
The arbitrators awarded $13,336.62.
Defendant contended that it was plaintiffs who proposed a system engineered building and represented that it could be built within the bond issue limits. Upon failure of the bids to so fall, plaintiffs suggested the change to conventional construction, and they were authorized to do so with the understanding that there would be no additional charge for architectural fees. There was no abandonment of any work in defendant's version. Further, a question was raised as to the good faith of plaintiffs in making these billings some nine months after the conversion authorization and, subsequently, raising the demand to the final $14,817.60 figure during the arbitration proceedings, defendant claiming they were retaliation for its refusal to pay plaintiffs' base fee in monthly increments of $1,000.
*378 Plainly, resolution of this dispute involved fact finding and contractual interpretation of a kind for which the parties included the arbitration clause in their agreement. Defendant does not contend, nor does the award's face reveal, any of the situations described in N.J.S.A. 2A:24-8. What is argued is that the arbitrators misfound the facts and/or misinterpreted the contract. Such findings and interpretation, however, are uniquely within the province of the arbitrators, Daly v. Komline-Sanderson Engineering Corp., supra; Standard Oil, etc., Union v. Esso Research Co., supra, and not reviewable by the judiciary; Local Union 560 v. Eazor Express, Inc., supra, the meaning of the contract provision in this situation being "reasonably debatable in the minds of ordinary laymen", Standard Oil, etc., Union v. Esso Research Co., supra. Allegations of this type constitute no refuge from the award.

IV
Defendant's final point, the limiting effect of the bond issue on its right to contract, requires a more searching examination. It is unclear whether defendant contends that such a limitation was expressly agreed upon between the parties or is mandated by law. The arbitrators clearly found no such express agreement within the contract, and since "the essence of arbitration is * * * that the arbitrators decide the * * * facts * * *," Daly v. Komline-Sanderson Engineering. Corp., supra, their award is not to be overturned on grounds of factual error unless "the mistake is apparent on the face of the award itself or is admitted by the arbitrator himself", Held v. Comfort Bus Lines, Inc., supra, 136 N.J.L. at 641. No such error appears evident from the face of the award, nor is there any such admission. Nor does the contract clearly indicate it. The only possible augury thereof is found in Article 12:
It is understood and agreed between the owner and the architect that this entire contract is conditioned upon the voters' approval authorizing the Board to issue bonds for this project and if the voters *379 fail to vote their approval of such authorization in two referendums, neither party shall be under any obligation to the other on this contract, except as hereinafter stated * * *.
Manifestly, this phraseology is equally, if not more so, amenable to being construed merely as expressing the fact that the bond issues were to constitute the prime source of the financing "for this project," absent which the project would fail and conditioning the contract between the parties here on the voters' approval thereof as against the construction that the bond funds were to be the only money source and limiting costs and fees thereby. The arbitrators' factual determination of no such understanding is, consequentially, unassailable.
Since the authority of the arbitrators arises from and is limited by the terms of the contract between the parties, Wm. J. Burns, etc., Inc. v. N.J. Guards Union, supra, and the contract here has been conclusively interpreted as permitting charges above the bond appropriations earmarked for this particular school project, defendant's claim that the arbitrators' award was illegal is, at its base, a claim that a school board possesses no authority to enter into a contract whose terms allow the possibility of billings in excess of funds specifically appropriated to the particular project involved. No New Jersey case has been found passing on this precise question. Under Brooks v. Pa. Mfrs. Ass'n Ins. Co., supra, the court must entertain it.
While there is nothing inherent in the nature of a school board creating such a limitation once the power to incur indebtedness and make expenditures has been conveyed it by the Legislature, undisputed here, "the amount of indebtedness or expenditures which a school organization may contract ordinarily is limited by statutory provision", 79 C.J.S. Schools and School Districts § 325 at 11, and where statutory or constitutional provisions limit the amount which can be expended for a particular purpose "to the amount budgeted or appropriated for the particular purpose," contracts requiring *380 excess of that sum have been declared unlawfully made. 79 C.J.S., supra, § 325b(4); cf. Yanke v. School Dist. # 65 of Maricopa Cty., 56 Ariz. 93, 105 P.2d 966 (Sup. Ct. 1940); Glines v. Bain, 157 Or. 358, 72 P.2d 33 (Sup. Ct. 1937).
Counsel has not cited, nor has the court's own research uncovered, such a limiting statute or constitutional provision governing defendant board. On the contrary, Title 18 of the Revised Statutes provides for the raising of additional funds when it becomes apparent that previously appropriated monies are insufficient. N.J.S.A. 18A:22-40, applicable to Type II, non-city, school districts, of which defendant is one, states:
Whenever a board of education shall determine that it is necessary to raise additional sums of money, over and above the amount fixed and determined in the last annual school budget, by special district taxes, for:
(e) Any capital project, the cost whereof is to be paid directly from such taxes;
it shall estimate the amount so deemed necessary to be raised, levied and collected.
There is no requirement that this be done before rather than after the amount needed is fixed. Where the district has a board of school estimate, the final estimate is delivered to the required municipal and county officials stated in N.J.S.A. 18A:22-26, "and such amount shall be assessed, levied and raised under the procedure and in the manner provided by law for the levying and raising of special school taxes * * *" (the last clause apparently referring to N.J.S.A. 18A:22-34). N.J.S.A. 18A:22-41 provides that in school districts where amounts to be collected by taxes for school purposes "are determined by the voters of the district" (Type II districts without boards of school estimate) the matter of special taxes to raise additional monies must be submitted to them "at a special school election."
The Legislature thus foresaw a situation, as here, in which a school board undertook a project, appropriated money for *381 it according to law, entered into contracts and, with the passage of time, discovered the original appropriation was not enough. The solution advanced by the lawmakers was to permit the school board to raise additional funds to meet the added expenditure required rather than allow the project to lie unfinished, unused and the contractors unpaid.
That West Milford does not have a board of school estimate and that additional taxes require voter approval is of no matter. The question is whether the Legislature intended that a school board not have the power to enter into contracts which possibly could bring the total project expenditure above originally allotted funds. That the voters must approve does little, if any, damage to the inference from N.J.S.A. 18A:22-40's conveyance of the power to seek additional funds that the Legislature did not so intend. Added support for this position, that a school district's financing of a project is not limited to the specific appropriation made therefor, is found in N.J.S.A. 18A:21-4 dealing with the use which may be made of the capital reserve fund the district may set up. It pertinently reads:
A board of education may in any school year draw against the capital reserve fund, up to the amount of the balance therein, to the extent such withdrawal is anticipated as a revenue in the school budget for the then current school year * * *.
It is clear that this statute permits a district to establish within the school year a contingency fund, financed by the withdrawal of capital reserve funds, providing for occurrences which make original cost estimates and appropriated funding based thereon insufficient. The Legislature having provided avenues by which overruns could be lawfully paid, it follows that the fact that a contract may lead to billings bringing the project's total expense above the original appropriation was not intended by the Legislature to be invalid as excessive of the district's authority to contract.
Significant to the inquiry of legislative intention in this area is the absence in Title 18, the education statute, of a provision *382 similar to that contained in N.J.S.A. 40:50-6. There it is stated:
No municipality shall enter into any contract, the cost of which is to be met by funds not included in the budget of appropriations for the year, unless prior thereto there shall have been regularly adopted by the governing body an ordinance authorizing an appropriation sufficient to meet the cost of carrying out the provisions of the contract.
"A court should not write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment. Craster v. Board of Commissioners of City of Newark, 9 N.J. 225 (1952). In construction of a statute, words should never be supplied or changed, unless to do so will effect a meaning clearly shown by the other parts of the statute, or to carry out an intent somewhere expressed, Lane v. Schomp, 20 N.J. Eq. 82 (Ch. 1869)," [Bd. of Ed. of Voc. School v. Finne, 88 N.J. Super. 91, 111 (Law Div. 1965)]
There the court held that a contract involving the expenditure of capital funds antedating the appropriation of the funds for the project was not, therefor, invalid.
Though the question of the effect that the subsequent insufficiency of the funds would have on the contract's validity was not reached in Finnte, the principles of statutory construction followed there are applicable to this case. A holding that a contract's potentiality for exceeding the voter approved funding results in the school district's obligation being invalid and nonenforceable would render N.J.S.A. 18A:22-40 a nullity or impute to the Legislature the intent to allow school districts the arbitrary power to determine which of such contracts to honor via the added appropriations technique and which to avoid as illegal. Courts are not to "impute to the legislature an intent to enact useless legislation", State v. Wean, 86 N.J. Super. 283, 288-289 (App. Div. 1965). The alternate result would violate "the moral principle that a government which would encourage fair dealing in private transactions should insist upon nothing less of its own agencies", 405 Monroe Co. v. Asbury Park, 40 N.J. 457, 462 (1963).
*383 The positive inferences deduceable from the enactment of N.J.S.A. 18A:22-40 and N.J.S.A. 18A:21-4, plus the negative consequences of a contrary holding, convince the court that a school district may enter into contracts whose terms carry the seed potential of bringing the project's total expenditures above the original specified funding therefor. The statutes cited by defendant, N.J.S.A. 18A:24-10(c), 12(b), 47, 51 and 53, do not require a different conclusion. These govern the mechanics of bond authorization, issuance and the use of funds garnered thereby, and do not limit a school board's authority to seek additional funds when a project overruns its authorized funding. Whether such ought be the rule where the contract necessarily will breach the allotted funding is, of course, not before the court or decided in this case. The school district having the power to enter into the contract with plaintiffs, the arbitrator had the power to grant an award on its terms. Wm. J. Burns, etc., Inc. v. N.J. Guards Union, supra.
Even were recovery deemed barred under the express terms of the contract, long established precepts of equity and fairness in our law would entitle plaintiffs to recovery. As noted in Hudson City, etc., Co. v. Jersey City Incinerator Auth., 17 N.J. 297 (1955):
"The basic rule * * * is that there can be no recovery under an express municipal contract entered into without observing the mandatory legal requirements specifically regulating the mode by which a municipal power is to be exercised. Where express contracts must be preceded by certain steps or made in a certain way there is `considerable authority, however, to support the rule that a recovery may be had on a quantum meruit * * * upon the theory that it is not justice where a contract is entered into between a municipality and another, in good faith, and the corporation has received benefits thereunder to permit the municipality to retain the benefits without paying the reasonable value therefor * * *'." [at 305; citations omitted; emphasis in original]
The court there concluded:
In summary, we find * * * that where the contract was not within the corporate power no recovery may be had by the contractor either *384 on express or implied contract; where the Legislature expressly prohibits the incurring of liability on contract or otherwise no recovery may be had either on express or implied contract; but where the power to contract lies within the competence of the municipal corporation and there has been an irregular exercise of that power in good faith, recovery on the quantum meruit may be had although the express contract is void. [at 309; emphasis supplied]
The principle was reaffirmed in 405 Monroe Co. v. Asbury Park, supra, where the court stated.
* * * if the difficulty is an irregularity in the exercise of a power the municipality does have and the Legislature had not decreed the consequences of the irregularity, our cases seek a just result. In such circumstances one who deals with the municipality in good faith may be permitted to invoke the concept of ratification, or estoppel, or if in the public interest the agreement itself ought not to be enforced, still relief may be granted to the extent of the benefit conferred upon and knowingly accepted by the municipality. [40 N.J. at 463]
There is no question here that the defendant benefited from the contract with plaintiffs. The school was occupied in September of 1973 and utilized since. Any controversy concerning the adequacy and valuation of the services rendered by plaintiffs presented factual matters within the domain of the arbitrators, Daly v. Komline-Sanderson Engineering Corp., supra; Carpenter v. Bloomer, supra. So also did any dispute as to the good faith of the parties in their dealings with one another. There is no contention by defendant that it has no power to enter into contracts necessary to the erection of a school and, in fact, it admits its liability to plaintiffs for the $18,468.42 balance of the authorized monies. In view of these circumstances a court, hearing the matter as the initial tribunal and making the fact findings of good faith and service valuation which the arbitrators plainly made, would be permitted under the above-stated law to enter a quantum meruit judgment in plaintiffs' favor even were the contract void and unenforceable. The facts reveal, at worst, a good faith "irregular exercise" of an admitted power to contract by defendant. No reason presents itself for denying the parties' chosen tribunal the use of this legal principle, particularly *385 in the face of an arbitrator's right to ignore the law entirely. Cf. Anco Products v. T.V. Products, supra. It follows that an award grounded therein would be valid and confirmable, absent the conditions of N.J.S.A. 2A:24-8.
Plaintiffs, then, are entitled to summary judgment on the award. As to interest, no precedent in this jurisdiction has been found.
In the absence of a controlling precedent, when a court of equity determines that one party is chargeable with a fixed amount as of a prior date, the court is free to determine whether interest should be allowed in addition to the principal sum, and if so the rate thereof according to the plainest and simplest considerations of justice and fair dealing in the given case. [East Ridgelawn Cemetery v. Winne, 19 N.J. Super. 413, 422 (App. Div. 1952), mod. 11 N.J. 459 (1953)]
The general rule is that an arbitration award for a certain sum of money carries interest from the time it is due and payable. 6 C.J.S. Arbitration and Award § 80 b(3) (j) at 224. R. 4:42-11(a) provides that "Judgments, awards and orders for the payment of money and taxed costs shall bear interest at 6% per annum from date of entry, except as otherwise ordered by the court." It is the conclusion of the court that the circumstances of this case justify interest at 6% from the dates of the main and reimbursement awards.