HOT SPRINGS COUNTY SCHOOL
DISTRICT NO. 1, Appellant
(Appellant),

v.

STRUBE CONSTRUCTION COMPANY,
a/k/a Strube Construction, Inc.,
Appellee (Appellee).

STRUBE CONSTRUCTION COMPANY,
a/k/a Strube Construction, Inc.,
Appellant (Appellee),

v.

HOT SPRINGS COUNTY SCHOOL
DISTRICT NO. 1, Appellee
(Appellant).

Nos. 84–250, 84–251.

Supreme Court of Wyoming.

March 11, 1986.

John A. Sundahl and Paul Kapp of Godfrey & Sundahl, Cheyenne, for Hot Springs County School Dist. No. 1.

William L. Miller and Holly Brown of Cent. Wyoming Law Associates, P.C., Riverton, for Strube Const. Co.

Before THOMAS, C.J., and ROSE,* ROONEY,** and CARDINE, JJ.

ROSE, Justice.

A dispute between Hot Springs County School District No. 1 (School District) and the Strube Construction Company (Strube) as a result of Strube's providing additional materials not originally called for in the agreement between the parties during the course of construction of a football field and running track in Thermopolis, Wyoming, resulted in the entry of an arbitration award in favor of Strube, in the amount of $71,500, on September 22, 1983. The School District, on October 13, 1983, filed a petition for review, notice of appeal and complaint to vacate the award in the district court. Strube filed a response and a motion to affirm the award on October 21, 1983. The district court entered its judgment confirming the arbitration award on August 28, 1984. Both parties have appealed to this court—the School District from the confirmation of the award and Strube from the district court's refusal to grant interest on the award from the date it was entered by the arbitrators. We shall affirm the district court's decision in both instances.

In its appeal, the School District has provided the following identification of the issues:

"1. Was there any agreement to arbitrate and, if so, was it for binding arbitration?

"2. Did the arbitrators lack jurisdiction to hear the matter?

"3. Did the arbitrators exceed their powers by disregarding the contractual provisions regarding written change orders and notice of their claims?"

In addition, Strube, in its appeal, raises the following issue:

"Whether Strube Construction is entitled to receive interest on the arbitration award from the date of the arbitration award rather than the date the judgment confirming the award was entered."

In May of 1982, the School District accepted Strube's bid to perform a portion of the construction work on a project calling for the replacement of an existing quarter-mile dirt track with a synthetic 400-meter track, and installation of a new football field in Thermopolis, Wyoming. The portion of the project awarded Strube included excavation and placement of base materials. During the course of construction, additional materials and labor not originally called for in the parties' contract were provided by Strube. Some of the additional costs engendered by this additional work were paid for by the School District pursuant to two change orders; however, the School District refused to honor all of the

requests made by Strube for additional payment, and the present dispute ensued.

For purposes of this opinion, an extensive discussion of the contentions of the parties is not helpful. The primary issues involved in the dispute concerned responsibility of payment for additional fill material provided by Strube at the request of another contractor to install a crowned field instead of a flat field originally called for in the project. The project architect and engineer, Wilkins International, Ltd., determined that these additional costs were not the responsibility of the School District as the additional materials were not called for under the project specifications, and no written change orders for such materials were approved in accordance with the contract procedures. Strube submitted an application for payment for these additional materials, to which the architect/engineer responded on July 9, 1982, by a letter in which Strube was notified that the application for additional amounts would not be paid at that time, and that the architect/engineer recommended to the School District that it make an application for "hearing by and resolution by arbitration."[1] This decision was confirmed in a letter from the School District's superintendent to Strube dated July 16, 1982, which provided in part:

"Please consider this letter as our formal written demand for arbitration pursuant to Section 101.16 of the Wyoming Public Works Standard Specifications, 1979 Edition, subject to formal approval by the Board of Trustees at their established meeting of July 21, 1982. Of course your contract with the Board requires you to continue on the job while these items are under arbitration."

A copy of this letter was not submitted to the American Arbitration Association as required to initiate arbitration proceedings before that group. In any event, Strube did not recognize its contract as incorporating the referenced section of the Wyoming Public Works Standard Specifications which required submissions of disputes to binding arbitration within 30 days, and continued to attempt to negotiate its claims directly with the School District. These negotiations were unsuccessful, and led to the architect/engineer writing a letter on September 21, 1982, terminating the contract "because of multiple violations of and/or breach of contract." In a follow-up letter dated October 1, 1982, by the architect/engineer, some 25 asserted violations of the agreement by Strube were identified. A reading of this document reflects that relationships between Strube and the architect/engineer had deteriorated as a result of the dispute, and the architect/engineer was angered by Strube's attempts to negotiate directly with the School District.

A formal request for arbitration was made by Strube in October of 1982 in letters to the School District and the American Arbitration Association. In the letter to the American Arbitration Association, a copy of which was also sent to the School District, Strube's attorney noted:

"* * * Strube Construction has never acknowledged or admitted the Wyoming Public Works Standard Specifications are part of the contract documents in this matter. Strube, however, submits the matter to arbitration *voluntarily* and in the event the Wyoming Public Works Standard Specifications are found to be applicable the matter would need to be arbitrated. Therefore, in order to get the matter resolved, Strube is submitting to arbitration." (Emphasis added.)

In response to Strube's demands for arbitration, the School District, through its at-

---

1. The letter provides in part:
   "(1) I feel we have reached an impasse on our attempts to resolve any claims submitted by you for anything other than your actual contracted amounts.
   "(2) At this time I am categorically denying and rejecting any and all claims submitted by your firm for any and all work or charges other than those defined by contract.

   * * * * * *

   "(10) It is my opinion and recommendation to the owners that those claims you have submitted for payment above and beyond your contract amount be given no further consideration at this time."

torney, in a letter to the American Arbitration Association dated November 10, 1982, opposed the demand for arbitration on the ground that the demand was untimely. In addition, the School District asserted a counterclaim against Strube and other contractors on the project in the event arbitration was allowed to proceed.

In a second letter, dated December 16, 1982, the School District's present counsel entered his appearance on its behalf and requested that all further correspondence be directed through his office.[2] This letter continued:

"It is my understanding that Strube withdrew its arbitration claim. It is my understanding that the position of the American Arbitration Association is that there is no longer a claim on the part of Strube. We have always claimed that Strube did not file the claim in time and therefore is barred. This becomes particularly true if Strube attempts to reassert the claim.

"The School District intends to proceed against its claims, but nevertheless, against Strube, his mining company as well as Hummer and Arrow [other contractors on the project] and their companies." (Bracketed material added.)

Strube, in a letter dated December 21, 1982, vigorously denied withdrawal of its arbitration claim, and requested that all the various claims and counterclaims be combined for resolution. In response to a request by the regional director of the American Arbitration Association, Strube's counsel, on January 7, 1983, wrote a letter clarifying Strube's position with regard to the American Arbitration Association's ability to proceed with arbitration. Strube reiterated its position that its contract with the School District did not include the provisions of the Wyoming Public Works Standard Specifications which required submission of disputes to binding arbitration within 30 days after such disputes arose. Further, Strube argued that, even if such submission was required, it had sought arbitration in a timely manner. A copy of this letter was sent to the School District's counsel.

After the matter had been set for hearing, the School District filed its formal counterclaim against Strube, dated August 5, 1983. In this counterclaim, the School District acknowledged the existence of its contract with Strube and charged that Strube, without approval, had changed the project concept from one which did not require additional fill material to one requiring a large amount of such material. This action, the School District asserted, precipitated the additional claims made by Strube and the other contractors for additional compensation, and caused the School District to incur additional expenses of approximately $100,000. In addition, the School District asserted that some of the work done by Strube was performed negligently, and that Strube failed to timely complete its work resulting in damages to the School District in the amount of $80,-000.

The matter proceeded to hearing before a panel of three arbitrators, selected by the parties, beginning August 22, 1983. At the outset of this hearing, the School District made a motion to dismiss for the reason that Strube's demand for arbitration was not filed within 30 days as required by the Wyoming Public Works Standard Specifications, which specifications, the School District argued, were part and parcel of its agreement with Strube. The arbitrators denied the motion without setting forth their reasons, and the hearing resulted in entry of an award in favor of Strube in the amount of $71,500. The counterclaims asserted by the School District were denied.

On October 13, 1983, the School District filed a Petition for Review, Notice of Appeal, and Complaint to Vacate Award. Strube's response to the petition for review and motion to affirm the award was filed in the district court on October 21, 1983. On December 1, 1983, the district court granted the School District's motions to require filing of the record of the arbitration pro-

---

**2.** The November 10, 1982, letter was written by different counsel.

ceeding together with a transcript of the testimony at the hearing in the district court, establishing a briefing schedule and setting the matter for oral argument on March 15, 1984. Extensive briefs were filed by both parties, and the hearing was reset for May 3, 1984, at which time the district court heard argument by counsel. The district court entered its judgment confirming the arbitrators' award but refusing to grant interest from the date of entry of the award on August 28, 1984. Both parties have appealed.

## I

## WAS THERE AN AGREEMENT TO ARBITRATE?

A. *Do the Arbitration Provisions of the Wyoming Public Works Standard Specifications Apply?*

The primary argument advanced by the School District throughout the various stages of its dispute with Strube is that Strube failed to file its demand for arbitration within 30 days from the date the architect/engineer rendered his decision denying Strube's claim for additional compensation as required by the Wyoming Public Works Standard Specifications. The School District argues that its contract with Strube incorporated these specifications as part of its terms. The district court found that the agreement between the parties did not incorporate the specifications relied upon by the School District. We agree.

3. Section 101.16, Wyoming Public Works Standard Specifications (1979), provides:
"All claims[,] disputes and other matters in question arising out of, or relating to, this Agreement or the breach thereof except for claims which have been waived by the making or acceptance of final payment as provided by Section 101.14.11, *Waiver of Claims*, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining. This agreement so to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in any court having jurisdiction thereof.
"Notice of the demand for arbitration shall be filed in writing with the other party to the

The contract between the parties was signed on or about May 10, 1982. The only reference to the Wyoming Public Works Standard Specifications in the contract documents provides:

"All *material and methods shall conform to the applicable portion of the Standard Specifications* for Public Works, latest edition, (referred to as Standard Specifications hereinafter) unless otherwise specified or directed." (Emphasis added.)

This language does not purport to adopt the standard specifications in toto; rather, only the applicable portion dealing with material and methods is referenced. An examination of the specifications reveals that they are divided into 26 sections, ranging from General Conditions to Portland Cement Concrete Pavement. The majority of these sections describe the composition of materials and the manner of installation of such materials. By the language of the contract, the parties recite that they intended that "[a]ll material and methods shall conform to the applicable portion" of the specifications. This phrase is descriptive of the quality and manner of installation of materials, not the general conditions which contain the provision relied upon by the School District.[3]

The parties to an agreement are free to incorporate by reference other documents as part of their contract, the terms of which are equally binding upon the parties.

Agreement and with the American Arbitration Association, and a copy shall be filed with ENGINEER. The demand for arbitration shall be made within the 30-day period specified in Section 101.09.07, *Decisions on Disagreements*, paragraph two, where applicable, and in all other cases within a reasonable time after the claim, dispute or other matter in question has arisen, and in no event shall it be made after institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.
"CONTRACTOR will carry on the Work and maintain the progress schedule during any arbitration proceedings, unless otherwise agreed by him and OWNER in writing."

*Busch Development, Inc. v. City of Cheyenne*, Wyo., 645 P.2d 65 (1982). In the present case, the contract between the parties did not incorporate the provision of the specifications the School District relies on. For this reason the School District's argument that Strube's demand for arbitration was untimely is not well taken. See also Annot., 25 A.L.R.3d 1171 (1969).

**B.** *Did the Parties Otherwise Agree to Submit Their Dispute to Arbitration?*

As a secondary argument, it is urged by the School District that, if we agree that the contract documents did not include the arbitration provisions of the Wyoming Public Works Standard Specifications, then there is no arbitration provision in any of the contract documents and the arbitrators exceeded their powers by proceeding with arbitration. In its decision letter filed on July 23, 1984, the district court observed:

"Clearly the parties were not required by any written contract to submit their disputes to arbitration, nor did any Wyoming law require arbitration. No party, under Wyoming law is required to arbitrate disputes unless it has agreed to arbitrate that dispute, *American National Bank of Denver v. Cheyenne Housing Authority*, 562 P.2d 1017 (Wyo. 1977), *Oil, Chemical, Atomic Workers v. American Oil*, 528 F.2d 252 ([10th Cir. 1976]). There is no statutory authority in Wyoming requiring arbitration. Wyoming law does specify that in order for an arbitration provision to be enforcible [sic], it must be in writing, W.S. sec. 1-36-103. Inasmuch as there was no contractual or statutory provisory requiring arbitration between these two parties the question becomes one of whether Appellant and Appellee agreed to submit their dispute to arbitration. For the answer, an examination of the factual matters must be considered. Appellant, in a letter to Appellee demanded arbitration, early on however there was no request to the American Arbitration Association. Appellee did, however, file a written request for arbitration with the American Arbitration Association on October 21, 1982. Appellant filed its Motion to Dismiss, citing as grounds that Appellee was 97 days late in said request. The Arbitrators heard the argument of counsel and denied the motion. After the denial, the parties then commenced the arbitration proceedings which lasted four days.

"At no time during the arbitration hearing did Appellant raise the issue or suggest that no arbitration agreement existed between the parties. A Motion to Dismiss for failure to timely request arbitration cannot be convoluted to mean that there was no agreement to arbitration. Appellant, in preparation for the arbitration hearing, corresponded with the American Arbitration Association, requested that certain persons be issued subpoenas and paid a filing fee, (letter dated August 4, 1983 from John Sundahl to American Arbitration Association). This Court finds there was an agreement to arbitrate the dispute and the agreement to arbitrate was outside the provisions of the Wyoming Public Works Standard Specifications. For that reason the arbitrators correctly heard the dispute and did not exceed their powers."

■ An agreement to arbitrate need not be written and can arise as the result of the conduct of parties to an existing dispute regardless of whether or not they have previously contracted for arbitration. 5 Am.Jur.2d, Arbitration and Award § 12, pp. 528–529 (1962); and 6 C.J.S., Arbitration § 8, p. 172 and § 17, p. 187 (1975). Other courts have recognized that a party, by participating in arbitration proceedings, can be deemed to have waived its objections to the arbitrability of the dispute. *O'Malley v. Petroleum Maintenance Company*, 48 Cal.2d 107, 308 P.2d 9 (1957); *American Motorists Insurance Company v. Llanes*, 396 Mich. 113, 240 N.W.2d 203 (1976); *New Jersey Manufacturers Insurance Company v. Franklin*, 160 N.J.Super. 292, 389 A.2d 980 (1978); *National Cash Register Company v. Wilson*, 8 N.Y.2d 377, 208 N.Y.S.2d 951, 171 N.E.2d

302 (1960); *Coventry Teachers' Alliance v. Coventry School Committee*, R.I., 417 A.2d 886 (1980); and Annot., 33 A.L.R.3d 1242 (1970). The comments of the Colorado Supreme Court in *People v. Crystal River Corporation*, 131 Colo. 163, 280 P.2d 429, 432 (1955), are typical:

> "We think it is fundamental law that an individual or an agency of the state may not freely participate in the selection of arbitrators, in accordance with statute, attend the hearing, submit his evidence, hope for a favorable award, and in the event of an adverse finding, seek a review merely because the award is unfavorable to him. \* \* \* "

■ The School District argues that it did not waive its right to object to arbitrability, because it moved to dismiss the arbitration at the commencement of the hearing. In this respect we agree with the district court; a motion to dismiss for untimely filing cannot be reshaped into an objection to jurisdiction on the grounds there is no agreement to arbitrate. In reaching this decision, we are mindful of the provisions of § 1–36–104(a), W.S.1977:

> "On application of a party showing an arbitration agreement and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration. If the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to determine the issue raised and shall order or deny arbitration accordingly."

■ In the present case, the School District, throughout the arbitration proceedings, was aware of Strube's position that the agreement between the parties did not require arbitration, but that Strube was submitting to arbitration voluntarily to attempt to reach an expeditious resolution to its dispute with the School District. In submitting its counterclaim for consideration by the arbitrators, the School District's request for relief sought a resolution of all the disputes between the parties, including issues not raised by Strube. The School District was afforded a full and fair opportunity to test the proof advanced by Strube and to offer evidence in its own behalf on all the issues raised by the various claims and counterclaims. If the School District truly believed that there was no agreement to arbitrate, § 1–36–104(a) provided a speedy and conclusive method to have that question resolved. Under the circumstances present in this case, we have no difficulty in finding the School District by its participation waived its right to raise the issue of whether or not the dispute with Strube was subject to decision in the arbitration proceeding.

■ The School District raises the specter of the effect its refusal to participate in the arbitration proceedings might have had in the event a reviewing court found there was, in fact, an enforceable agreement to arbitrate. In such instance, it is asserted that the opportunity to defend or be heard upon the merits of the case would be lost forever. While we believe that § 1–36–104(a) is designed to avoid this possibility, we find that a party who proceeds with arbitration over his explicit objections as to arbitrability is not foreclosed from raising the issue on a motion to confirm or vacate the award in the district court. *Arrow Overall Supply Company v. Peloquin Enterprises*, 414 Mich. 95, 323 N.W.2d 1 (1982); *New Jersey Manufacturers Insurance Company v. Franklin*, supra; *Ben Gutman Truck Service, Incorporated v. Teamsters Local No. 600*, 484 F.Supp. 893 (E.D.Mo.1980). As we have found, however, the School District did not object to arbitrability of the dispute but chose instead to participate in hopes of a favorable result.

## C. *Binding Arbitration Award?*

■ The last argument of the School District on the existence of an arbitration agreement is that any award by the arbitrators is not final and binding. In making this argument, the School District relies upon part of our decision in *State Highway Commission of Wyoming v. Brasel & Sims Construction Co., Inc.*, Wyo., 688 P.2d 871, 876 (1984), wherein it is stated:

" * * * The intention of the parties to submit their disputes to conclusive determination by a contractually designated agent should be made manifest by plain language. * * * "

In that case, we were confronted with the contention that Brasel & Sims Construction Co., Inc., in its contract with the state highway commission, agreed to submit any disputes to the state highway commission for final and conclusive determination. During our discussion, we noted:

"Our holding in *Brasel & Sims Construction Co., Inc. v. State Highway Commission of Wyoming, supra,* does not prevent parties from agreeing to submit disputes to one of the parties to the contract and further agreeing to be bound by that party's decision. Such provisions are fairly common in construction contracts and are enforceable in court. *United States v. Moorman,* 338 U.S. 457, 70 S.Ct. 288, 94 L.Ed. 256 (1950). These provisions are valid because the court, not the agency, performs the judicial function of interpreting the terms of the contract and their legal effect in accordance with the familiar requirements of good faith and absence of collusion, fraud or mistake. *United States v. Moorman, supra;* 3A Corbin on Contracts, § 652, pp. 121–131. We recognized the validity of self-imposed prerequisites to the initiation of a suit in *Brasel & Sims Construction Co., Inc. v. State Highway Commission of Wyoming, supra,* [Wyo.], 655 P.2d [265] at 268 [1982]:

"' * * * Parties to a contract can create valid conditions precedent to the right to bring an action and the claim will not accrue until the condition has been performed.'

"To the same effect, see *United States v. Joseph A. Holpuch Company,* 328 U.S. 234, 66 S.Ct. 1000, 90 L.Ed. 1192 (1946); *United States v. Blair,* 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039, *reh. denied* 322 U.S. 768, 64 S.Ct. 1052, 88 L.Ed. 1594 (1944)." 688 P.2d at 875.

In the present case, we are not concerned with a provision wherein the parties agreed that the decision of *one of the parties or its agent* would be the final and conclusive resolution of a dispute between them. Instead, the parties in this case submitted their dispute for resolution by an impartial third party, the arbitration board which they mutually selected. The School District and Strube chose to submit a number of issues for determination by voluntary arbitration. Little purpose would be served by such submission if the arbitrators' decision is without any binding effect. We will not assume that the parties intended a futile act when they submitted their dispute for arbitration.

II

DID THE ARBITRATORS ACT IN EXCESS OF THEIR POWERS?

■ Arbitration is favored by public policy and this court. *T & M Properties v. ZVFK Architects and Planners,* Wyo., 661 P.2d 1040 (1983); *Northern Supply Company v. Town of Greybull,* Wyo., 560 P.2d 1172 (1977); *Riverton Valley Electric Association v. Pacific Power and Light Company,* Wyo., 391 P.2d 489 (1964). We have long recognized the value of voluntary arbitration as a mode of settlement of disputes in an inexpensive and expeditious manner, without resort to a tribunal, and conducted without the rigid formality of strict rules of law. *T & M Properties v. ZVFK Architects and Planners, supra,* 661 P.2d at 1043. No party, however, is required to submit to arbitration unless it has agreed to arbitration of that dispute. *American National Bank of Denver v. Cheyenne Housing Authority,* Wyo., 562 P.2d 1017 (1977). Where the parties have chosen to submit their dispute to arbitration, we are reluctant to disturb the arbitrators' just solution to controversies. *Northern Supply Company v. Town of Greybull, supra; Oil, Chemical & Atomic Workers Union, Local 2-230 v. Great Lakes Carbon Corporation,* Wyo., 376 P.2d 640 (1962).

Against this background, the School District argues that the arbitrators' award in this case should be set aside because the arbitrators ignored the provisions of its contract with Strube requiring that, prior to the performance of any additional work or providing materials not called for in the original agreement, Strube had to obtain a written change order signed by the architect/engineer and the School District. In the absence of a proper change order, the School District insists that there is no legal basis for the award, and the arbitrators committed a plain and manifest mistake of law. In making this argument, the School District asks that this court substitute its interpretation of the parties' agreement for that of the arbitration panel. This we cannot do. A court may not overturn the arbitrators' decision simply because the court believes its own interpretation of the contract would be the better one. *W.R. Grace and Company v. Local Union No. 759, International Union of United Rubber, Cork, Linoleum and Plastic Workers of America*, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983).

No written findings and conclusions of law were made by the arbitrators in the present case. We do not know if the arbitrators intended their decision to be based on a legal rule, had mistaken the rule, or were merely attempting to balance the equities involved in order to arrive at a fair result. We have held that where the parties have bargained for a "fair result" in submitting their dispute to arbitration, we will not inquire into the legal basis for the arbitrators' decision. *Oil, Chemical & Atomic Workers Union, Local 2–230 v. Great Lakes Carbon Corporation, supra*, 376 P.2d at 642–643.

We have already decided that the parties agreed to submit their dispute to arbitration. In order to upset the district court's decision upholding the arbitrators' award, the School District was required to prove by clear and convincing evidence that the award

"* * * was obtained by fraud, corruption, behavior beyond the bounds of natural justice, excess of authority, or a manifest mistake of fact or law appearing upon the face of the award * * *." *Riverton Valley Electric Association v. Pacific Power and Light Company, supra*, 391 P.2d at 500, citing *Waisner v. Waisner*, 15 Wyo. 420, 89 P. 580 (1907), and *Oil, Chemical & Atomic Workers Union, Local 2–230 v. Great Lakes Carbon Corporation, supra*.

This burden was not met. The evidence before the arbitrators was such that it would support the view that Strube provided the additional materials in question at the request of and with the knowledge of the School District or its representatives. There was no evidence, and the School District does not argue, that the arbitrators' award was tainted by fraud or misconduct. While this court may not have decided the matter as the arbitrators did, that is not a proper basis to overturn their award.

### III

DID THE DISTRICT COURT ERR IN REFUSING TO AWARD INTEREST FROM THE DATE OF THE ARBITRATION AWARD?

Strube has also appealed from the district court's judgment, claiming that the court erred by not granting interest from the date of the arbitration award. We are asked to declare that an arbitration award is tantamount to a judgment for purposes of § 1–16–102(a), W.S.1977, which provides:

"Except as provided in subsection (b) of this section, all decrees and judgments for the payment of money shall bear interest at ten percent (10%) per year from the date of rendition until paid."

The award of interest on judgments is in contravention of common law and is purely statutory. *Pure Gas and Chemical Company v. Cook*, Wyo., 526 P.2d 986 (1974); *Wyoming Central Irr. Co. v. laPorte*, 26 Wyo. 522, 188 P. 360 (1920); *Wyoming National Bank v. Brown*, 7 Wyo. 494, 53 P. 291, (1898), *reh. denied* 9 Wyo. 153, 61 P. 465 (1900). Statutes in derogation of common law, such as § 1–16–102(a), are

strictly construed. *Mahaney v. Hunter Enterprises, Inc.,* Wyo., 426 P.2d 442 (1967). We do not believe our legislature intended that the provisions of § 1–16–102(a) apply to arbitration awards.

In reaching this conclusion, we are not without guidance from the legislature. In the Uniform Arbitration Act itself, awards are not treated as judgments for purposes of enforcement until "the granting of an order confirming, modifying or correcting an award" by the district court. Section 1–36–116, W.S.1977.[4] In addition, our legislature has specifically prohibited the entry of judgments against governmental entities, like the School District, which provide for prejudgment interest. Section 1–39–118(d), W.S.1977, 1985 Cum.Supp.[5] Section 1–16–102(a) is a statute of general applicability in contrast to § 1–39–118(d). When a general statute conflicts with one of specific application, the specific is controlling. *City of Rock Springs v. Police Protection Association,* Wyo., 610 P.2d 975 (1980); *White v. Board of Land Commissioners,* Wyo., 595 P.2d 76 (1979).

The cases cited by Strube in support of its argument are not apposite. Those jurisdictions, by rule or statute, provide for prejudgment interest on arbitration awards. *R.E. Bean Construction Co. v. Middlebury Associates,* 139 Vt. 200, 428 A.2d 306 (1980); *Harsen v. Board of Education of Township of West Milford in County of Passaic,* 132 N.J.Super. 365, 333 A.2d 580 (1975). In those jurisdictions, an arbitration award is treated as a liquidated claim from the date of entry. In its brief, Strube admits that the provisions of § 1–39–118(d) prevent the entry of a judgment against the School District which provides for prejudgment interest on even liquidated claims. In the absence of clear statutory

allowance, we hold that such interest on arbitration awards against governmental entities is not available.

Affirmed.

ROONEY, J., files a dissenting opinion in which THOMAS, C.J., joined.

ROONEY, Justice, dissenting, with whom THOMAS, Chief Justice, joins.

I can agree with much of that said in the majority opinion. Arbitration is favored by public policy and by this Court, and the arbitration provisions of the Wyoming Public Works Standard Specifications do not apply to the issues in this case. But statutory requirements for binding arbitration cannot be ignored.

Section 1–36–103, W.S.1977 (part of the Uniform Arbitration Act), provides in pertinent part:

"A *written agreement* to submit any existing or future controversy to arbitration is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of the contract. * * * " (Emphasis added.)

Once it is determined that the arbitration provisions of the Wyoming Public Works Standard Specifications do not apply,[1] which determination was properly made by the trial court and in the first part of the majority opinion, there no longer existed a *written* agreement to arbitrate the issue upon which the arbitration award was made. Section 1–36–103 is clear in its meaning and scope. An agreement to arbitrate must be in writing. It need not exist before the issue arises, but an enforceable agreement must be made at some point before the matter is submitted to arbitration, and such agreement must be in writing.

---

**4.** Section 1–36–116, W.S.1977, provides:

"Upon the granting of an order confirming, modifying or correcting an award, the judgment shall conform and be enforced as any other judgment. Costs of the application, proceedings and disbursements may be awarded by the court."

**5.** Section 1–39–118(d), W.S.1977, 1985 Cum. Supp., provides:

"No judgment against a governmental entity shall include an award for exemplary or punitive damages, for interest prior to judgments or for attorney's fees."

**1.** If they were found to apply, then the consideration of the late filing of the demand for arbitration pursuant to the terms thereof would be in order.

Such was recognized by the trial court. It said in part:

"Clearly the parties were not required by any written contract to submit their disputes to arbitration, nor did any Wyoming law require arbitration. * * * Wyoming law does specify that in order for an arbitration provision to be enforcible [sic], it must be in writing, W.S. sec. 1–36–103. * * *"

But that court went on to say that although the school district objected to the late request for arbitration, it was bound by the proceedings simply because it participated therein, thereby forming an agreement. The reasoning is not consistent. Participation is not a writing. Except for that in the Wyoming Public Works Standard Specifications, there was no other written agreement to arbitrate.

A meeting of the minds as required for an enforceable agreement never existed—written or oral. Strube attempted to go in the back door for arbitration, after perhaps missing the deadline to do so as set forth in the Wyoming Public Works Standard Specifications. In its letter, it said in part:

"* * * Strube Construction *has never acknowledged or admitted* the Wyoming Public Works Standard Specifications are part of the contract documents in this matter. Strube, however, *submits the matter to arbitration* voluntarily and *in the event the Wyoming Public Works Standard Specifications are found applicable the matter would need to be arbitrated.* * * *" (Emphasis added.)

Obviously, Strube intended to arbitrate only if the Wyoming Public Works Standard Specifications were determined to be applicable.

Likewise, the school district intended to arbitrate under such standard specifications with the contention that the deadline for arbitration contained therein was not met; *but* if it were determined that the deadline was met, the arbitration could proceed under the provisions of such standard specifications. Of interest is the fact that all of the procedural details necessary in an arbitration agreement as set forth in such standard specifications (choosing arbitrators, etc.) were followed except that concerning the 30-day filing deadline. The school district continually objected to the proceeding under the Wyoming Public Works Standard Specifications on the basis of a missed filing deadline. Its participation in the proceedings was with the understanding that its objection was overruled and that such proceedings were under the written agreement as set out in the Wyoming Public Works Standard Specifications. There was no agreement—meeting of the minds—to arbitrate, except that such be pursuant to the Wyoming Public Works Standard Specifications. With both the trial court and the majority opinion finding that the issue involved did not come within the purview of the Wyoming Public Works Standard Specifications, i.e., the arbitration agreement in these specifications did not cover this issue, there did not exist any agreement—written or oral—for arbitration of the issue.

The trial court also stated:

"At no time during the arbitration hearing did Appellant raise the issue or suggest that no arbitration agreement existed between the parties. A Motion to Dismiss for failure to timely request arbitration cannot be convoluted to mean that there was no agreement to arbitration. * * *"

Obviously, a motion to dismiss, directed at the arbitration agreement which both parties believed would be that under which the arbitration would proceed, would imply the lack of any other agreement. The school district argued its motion to dismiss at the outset of the case, contending that there was no *enforceable* agreement to arbitrate. For example, it argued:

"The problem that Strube has is he is trapped. If the arbitration provisions [of the Wyoming Public Works Standard Specifications] apply, then he is out of time and he is clearly out of time. If the arbitration provisions don't apply, then he doesn't have any agreement to arbitrate, we shouldn't even been [sic] here in the first place. * * *"

Since the trial court and the majority opinion properly found the "arbitration provisions don't apply," the motion to dismiss was clearly on the basis that there was no enforceable agreement to arbitrate. There was no "convolution." A timely objection to this existence of an enforceable arbitration agreement was made before the hearing on the merits. The school district's participation in the arbitration hearing was in recognition that its motion to dismiss was *improperly* denied. To have refused to participate further at that point, relying upon reversal to correct the error, would not have been in accordance with the recognized procedures when a preliminary motion is not granted. An appeal can only be taken from a final order.

However, the majority opinion goes even further in disregarding the statutory authority for binding arbitration. It holds that:

"An agreement to arbitrate *need not be written* and can arise as the result of the conduct of parties to an existing dispute regardless of whether or not they have previously contracted for arbitration. * * *" (Emphasis added.)

This holding is in direct contradiction to the statutory authority for binding arbitration. Section 1–36–103, quoted supra, authorizes such only on the basis of a *written* contract.

The cases cited in the majority opinion to support the sweeping denunciation of the statutory language do not render such support. They concern the question of whether or not the issue for arbitration is within the scope of a contract recognized to have been *written*. They found that it was and, thus, uphold the arbitration. In other words, they concern that which was decided in the first part of the majority opinion—only they find the issue was in the scope of the written contract and not that it was not in such scope, as we properly find in this case.

The distinction is exemplified by the language defining the scope of the A.L.R.3d annotation cited in the majority opinion to support the sweeping conclusion contained therein and quoted supra:

"This annotation discusses the circumstances under which a party's participation in an arbitration proceeding may result in waiver of that party's right to stay arbitration proceedings, or set aside or modify an arbitration award, on the ground that the issue in dispute was not an arbitrable issue. The term 'arbitrability,' as used in this annotation, *involves questions whether the issue in dispute was within the scope of a contractual arbitration clause of the contract or within the scope of a submission agreement.*" (Emphasis added.) Annot., 33 A.L.R.3d 1242, 1243 (1970).

The quotation in the majority opinion from *People v. Crystal River Corporation*, 131 Colo. 163, 280 P.2d 429 (1955), to support the sweeping conclusion quoted supra is likewise misplaced. The arbitration proceedings therein were pursuant to mandatory arbitration provided by statute. A statutory procedure exists in Colorado whereby a claim must be presented to the game and fish commissioner for loss of domestic animals killed or damaged by wild animals. If dissatisfied with the determination of the claim, the matter is submitted to a board of arbitrators, whose award "shall be final." The court held that the arbitrated question could not be relitigated in court. The quotation in the majority opinion is language used in this context and has no relevancy to the situation, as here, where there was no statutory requirement for arbitration—and no written agreement to do so.

The other citations in the majority opinion given to support the sweeping conclusion quoted supra are likewise flawed.

In *National Cash Register Company v. Wilson*, 8 N.Y.2d 377, 208 N.Y.S.2d 951, 171 N.E.2d 302 (1960), there was a collective bargaining agreement between the parties and a subsequent strike settlement agreement between them. The court held that the arbitration clause in the original agreement applied to the supplemental strike settlement agreement. It did not

552

hold, as here, that the issue was beyond that upon which there was a written agreement to arbitrate, but held that arbitration was nonetheless proper. Additionally, there was no objection to the proceedings before the hearing on the merits, as here.

In *O'Malley v. Petroleum Maintenance Company*, 48 Cal.2d 107, 308 P.2d 9 (1957), the scope of the arbitration provisions of a labor agreement were in issue. The parties also entered into a written submission agreement to arbitrate the question as to the scope of the arbitration proceedings— quite different than in this case in which the school district objected to arbitration as being beyond the scope (as it was ultimately found to be) and wherein there was no written meeting of the minds to present the scope issue to the arbitrators for a final and binding decision thereon. In fact, one of the grounds for vacating an award is when "[t]he arbitrators exceeded their powers." Section 1–36–114(a)(iii), W.S.1977.

" * * * The courts are to decide the question of whether a grievance or dispute arises under the terms of the bargaining agreement and should be arbitrated, unless the agreement clearly demonstrates that the question is reserved to the arbitrator. [Citation.] Although this court has said that arbitration is favored, it is a matter of contract, and a party cannot be required to submit any dispute to arbitration which he has not agreed to submit. [Citation.]" *Panhandle Eastern Pipe Line Company v. Smith*, Wyo., 637 P.2d 1020, 1024 (1981).

Having decided, in this case, that the issue was beyond that contained in the contract, arbitration should not be approved.

In *New Jersey Manufacturers Insurance Company v. Franklin*, 160 N.J.Super. 292, 389 A.2d 980 (1978), the court not only found that the scope of arbitration was limited by the contract (uninsured motorist endorsement which provided for arbitration as to liability of uninsured motorist tortfeasor and quantum of damages) and did not include the issue of coverage, but it held that:

" * * * [M]ere participation in the arbitration does not conclusively bar a party from seeking a judicial determination of arbitrability, even as late as the time of claimant's application to confirm the award. * * *

" * * * If the objection to the arbitrator's jurisdiction is made known, participation in the merits of the controversy does not dictate a finding of waiver. * * * " 389 A.2d at 984.

Again, the case involved a question as to the scope of the arbitration agreement, and the jurisdiction was questioned, as here, before the hearing on the merits. Having found the issue to be beyond such scope (as is done in the first part of the majority opinion), the New Jersey court did not go on to approve the arbitration award (as is approved here in the second part of the majority opinion).

In *American Motorists Insurance Company v. Llanes*, 396 Mich. 113, 240 N.W.2d 203 (1976), the court rendered a four-paragraph per curiam opinion in which an arbitration award was upheld against the claim that the issue was not within the scope of the agreement. The holding was founded on the fact that the issue of arbitrability was not raised at arbitration. Again, the question was in relation to the scope of arbitration, and there was a written agreement to arbitrate.

In the other case cited by the majority opinion to support the statement that "[a]n agreement to arbitrate need not be written," *Coventry Teachers' Alliance v. Coventry School Committee*, R.I., 417 A.2d 886 (1980), the court again examined the *written* contract and *written* submission to determine if the issue was within the scope thereof. It found that it was. The court again noted that both parties participated in the arbitration without objection. Here, the majority opinion properly finds the issue not to be within the scope of the arbitration agreement, and that there was no *written* agreement to arbitrate the issue. Also, here, there was an objection to jurisdiction prior to the hearing.

I would reverse the trial court and vacate the award since there was no written agreement to arbitrate the issue and such fact was brought to the attention of the arbitrators before a hearing on the merits.